Richard P. RIZZO, Plaintiff–Appellee,

v.

CATERPILLAR, INC.,
Defendant–Appellant.

No. 89–2060.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1990.
Decided Oct. 1, 1990.

John J. George, Dennis J. Aukstik, Robert T. Oleszkiewicz, Daley & George, Chicago, Ill., for plaintiff-appellee.

Marcia L. Andersen, Gerald D. Skoning, Michael A. Warner, J. Stephen Poor, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Theodore R. Johnson, Caterpillar Inc., Peoria, Ill., for defendant-appellant.

Before BAUER, Chief Judge, and CUMMINGS and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Richard P. Rizzo believes that Caterpillar, Inc. (hereinafter, "the Company" or "Caterpillar") owes him special early retirement benefits under its employee benefits plan. In pursuit of that belief, Rizzo filed an action against Caterpillar in Illinois state court alleging breach of contract. Because the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*, preempts Rizzo's state law claim in this context, federal jurisdiction in the district court was achieved via removal under 28 U.S.C. § 1441. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Lister v. Stark,* 890 F.2d 941, 943–44 (7th Cir.1989). The district court ultimately granted summary judgment in favor of Rizzo, concluding under *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) that Caterpillar's denial of early retirement benefits in Rizzo's case amounted to an abuse of discretion. Because we believe that a material question of fact exists with respect to the benefits offer Caterpillar extended Rizzo and because the appropriate standard of review in this circuit for reviewing Caterpillar's denial of benefits is "arbitrary and capricious," we reverse and remand for further proceedings.

I.

Richard Rizzo retired from his position in the accounting department of Caterpillar's Joliet facility on April 1, 1987. Rizzo believed that he was retiring under the terms

of an early retirement plan which would entitle him to special early retirement benefits; the Company thought otherwise. Ultimately, Caterpillar denied Rizzo those supplemental retirement benefits. The basis for the confusion as to precisely what the terms of Rizzo's retirement package included are evident from the following description of the events which surrounded Rizzo's retirement.

In 1980, Caterpillar established the Special Retirement Supplement Plan ("the Plan") in an attempt to "increase the number of management retirements during a time of employment surplus and thereby reduce the number of management downgrades and layoffs." Under § 2 of the Plan, Caterpillar was authorized to establish specific eligibility rules for early retirement programs at its various facilities. Those eligibility rules could include, but were not limited to, age, service, payroll classification, Hay-points, job-classification, functional area and salary level.

Due to a significant downturn in demand for its products, Caterpillar was forced in January of 1987 to downsize its salaried workforce. Pursuant to the authority granted in § 2 of the Plan, Caterpillar instituted a special early retirement program known as the Salaried Workforce Adjustment Program ("SWAP"). Under SWAP, the plant manager at each of Caterpillar's local facilities was given the responsibility to submit a proposed reduction plan for that particular facility. Factors to be considered by the plant manager in formulating such a reduction plan were to include: the age of the employee considered for early retirement; the number of years of service which that employee had with Caterpillar; and whether that employee's job was "surplus." At Caterpillar's Joliet facility, the responsibility for formulating the proposed reduction plan fell on the shoulders of John Barrowman. After reviewing each of the proposed reduction plans submitted by the various facilities, a Central Committee at Caterpillar's headquarters in Peoria was given sole responsibility for making the final decisions regarding who would be offered the special early retirement benefits under SWAP.

Aware of the SWAP program and the fact that the Company was offering some employees early retirement benefits, Rizzo informed Jim Miller, a supervisor within the accounting department, that he would like to retire on April 1, 1987. Miller, in consultation with his immediate supervisor, T.W. Willingham, determined that Rizzo would not be eligible for early retirement benefits in April of 1987 in that his position within the accounting department would not be "surplus" for purposes of the SWAP program until December of 1987. Accordingly, they recommended that Rizzo wait until December to retire when he would be eligible for special early retirement benefits under SWAP. John Barrowman was informed of this decision and relayed it to the Central Committee as part of the recommended reduction plan for the Joliet facility. Referring to Rizzo's request for early retirement benefits as of an April retirement date, Barrowman's proposed reduction plan stated:

> This employee plans to retire as early as April 1987 (with or without early retirement package). Although we believe we can reduce the number of building accountants by 4th quarter 1987, it is critical that we not downsize prior to this date. We plan to negotiate employee staying to December in exchange for early retirement package.

Thus, there is no question that the Central Committee was generally aware of the Joliet facility's stance that Rizzo's position would not be "surplus" until December of 1987.

On February 10, 1987, Rizzo received—via his immediate supervisor, Marylean Abney—a sealed envelope which contained his offer of special early retirement benefits. The envelope contained five pages of information, the first of which was a summary of benefits as applied specifically to Rizzo. The retirement date shown on that summary was "March 1, 1987." A two-page document entitled "Special Retirement Supplement" was also included. Pertinent portions of that document stated:

> The employment reduction proposal submitted by your facility has been ap-

proved. Part of this proposal includes an opportunity for certain employees in areas where there are surpluses to voluntarily retire under a Special Retirement Supplement Arrangement. *You are one of the employees being offered the opportunity to retire under these favorable conditions.*

.     .     .     .     .

*If you elect to retire under this special arrangement, your retirement date would be the date shown on the attached summary.* Forms are also attached for your signature indicating your acceptance of the special arrangement and its terms (emphasis added).

When Rizzo received this packet of information from Ms. Abney, he was informed that he would have to wait until December 1, 1987 to retire if he wished to participate in the early retirement benefits program. He was also instructed that he should contact the Company's benefits representative regarding any questions he might have about the special retirement program.

On February 16, Rizzo took Ms. Abney's advice and met with Caterpillar's Personnel Assistant at the Joliet facility, William Morrison. While acknowledging that he had been told by his supervisors that his participation in the early retirement program was contingent upon his continued employment with the Company through December of 1987, Rizzo told Morrison that he would prefer to retire on April 1, 1987. Aware of Rizzo's offer which seemed to indicate a retirement date of March 1, 1987, Morrison enrolled Rizzo for the early retirement benefits as of April 1, 1987.

On February 18, after becoming aware of the fact that Rizzo had opted for retirement on April 1 *with special early retirement benefits,* T.W. Willingham called a meeting with Rizzo for the purpose of reiterating the Company's position that his offer of early retirement benefits was contingent upon a December 1, 1987 retirement date. Shortly thereafter, George Stybr, the Personnel Services Manager at Caterpillar's Joliet facility, voided the lump sum payment form which Rizzo had executed

accepting the Company's offer of early retirement benefits.

Notwithstanding all of the confusion surrounding the terms of his retirement package, Rizzo chose to retire on April 1, 1987. True to its promises, Caterpillar has refused to pay Rizzo any special early retirement benefits under the SWAP program.

## II.

Because our review in this appeal is of a successful motion for summary judgment, we proceed under a *de novo* standard. *Continental Corp. v. Aetna Casualty & Surety Co.,* 892 F.2d 540, 543 (7th Cir. 1989). Under the standard for summary judgment as set forth in Fed.R.Civ.Pro. 56(c), we first determine whether there are any genuine issues of material fact. If there are such issues, summary judgment may not be granted. In the absence of any such issues, we determine whether the moving party is entitled to judgment as a matter of law. *Thomas v. United Parcel Service, Inc.,* 890 F.2d 909, 914 (7th Cir. 1989). Underlying our analysis in this context is a recognition that we must "view the record and all inferences drawn from it in the light most favorable to the party opposing the motion." *Holland v. Jefferson Nat. Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989).

The district court's grant of summary judgment in favor of Rizzo was premised primarily upon a legal determination that the written offer of retirement benefits indicating a March 1, 1987 retirement date was not subject to modification by his supervisor's statements that the offer was contingent upon his remaining with the Company until December of 1987. A necessary component of that legal decision was a factual determination that the packet of information which Rizzo received was indeed prepared by the Central Committee and, as such, binding on the Company under the provisions of SWAP. Based on the fact that the Central Committee was the only entity authorized to extend offers of special early retirement benefits, it would appear that the packet of information was distributed at the request of the Central

Committee. Nevertheless, we believe Caterpillar has raised a material question of fact as to precisely who (or what entity) prepared the documents included in the packet of information and, as such, conclude that summary judgment on the issue of Caterpillar's liability for special early retirement benefits was inappropriate.

The packet of information which Rizzo received expressly stated that if he elected to retire under the special arrangement offered, his retirement date would be the "March 1, 1987" date shown on the attached summary of benefits. If this packet, including the sheet describing Rizzo's summary of benefits, was in fact prepared by or at the direction of the Central Committee, this would be strong support for Rizzo's position that the retirement date contemplated by the Central Committee was March 1, 1987. Indeed, the establishment of that fact may entitle Rizzo to a judgment on the issue of Caterpillar's liability.[1] According to Caterpillar, however, the Central Committee did not prepare this information. Rather, the information was prepared and sealed by lower level benefits personnel in Peoria who had no authority under the SWAP program to alter the terms of the offer contemplated by the Central Committee. Moreover, according to Caterpillar, the summary of benefits portion of the packet which indicated a "March 1, 1987" retirement date was meant only as a "snapshot" of benefits which each employee entitled to special early retirement benefits would receive as of a *hypothetical* March 1, 1987 retirement date. In support of this proposition, Caterpillar offers the affidavit of George Stybr, the Personnel Services Manager at the Joliet facility, which states in pertinent part:

[t]he supervisor was provided with a sealed envelope for the employee, containing material explaining the offer and giving the employee a financial "snapshot" of the benefits that the employee would receive as of a particular retirement date. The envelopes were prepared and sealed by the Company's benefit personnel in Peoria.

Caterpillar also directs our attention to the deposition testimony of John Barrowman in which he stated that a member of the Central Committee, Frank Grimsley, had informed him that the Central Committee had decided to extend Rizzo early retirement benefits only as of a December 1987 retirement date.

We do not dispute the fact that Caterpillar's assertions appear to be contrary to the terms of the offer as expressly stated in the packet of information which Rizzo received. It is also apparent to us, however, that the packet of information describes an offer under the SWAP program which is contrary to the stated purpose of the Special Retirement Supplement Plan; that purpose being to downsize the salaried workforce by offering early retirement incentives to those employees whose jobs were considered "surplus" by the Company. In this regard, we note that there is no dispute that the position which Rizzo occupied prior to his retirement was not considered "surplus" by those officials within Caterpillar who were responsible for making that determination. Based on this inconsistency and Caterpillar's assertions that the Central Committee did not offer Rizzo special early retirement benefits as of a March 1, 1987 retirement date, we conclude that a material question of fact exists regarding the terms of the offer

---

1. As the district court correctly concluded, ERISA does not recognize oral modifications of a written benefits plan. *Lister v. Stark*, 890 F.2d 941, 946 (7th Cir.1989); *see also Musto v. Metropolitan Life Ins. Co.*, 861 F.2d 897, 910 (6th Cir.1988); *Nachwalter v. Christie*, 805 F.2d 956, 960 (11th Cir.1986). *But cf., Black v. TIC Investment Corp.*, 900 F.2d 112, 115 (7th Cir.1990) ("estoppel principles are applicable to claims for benefits under unfunded single-employer welfare benefits plans under ERISA").

Under the provisions of SWAP, the Central Committee was given the sole authority to deter-

mine who would receive special early retirement benefits. If the Central Committee exercised that authority with respect to Rizzo in the packet of information sent to his attention, then the question becomes whether the subsequent denial of benefits was "arbitrary and capricious" under the controlling precedent. *See Firestone Tire*, 489 U.S. at 114, 109 S.Ct. at 956; *Egert v. Connecticut General Life Ins. Co.*, 900 F.2d 1032, 1035 (7th Cir.1990).

extended by Caterpillar which precludes summary judgment at this juncture.

 Because we are remanding for resolution of this factual issue and, ultimately, for a determination of Caterpillar's potential liability under ERISA for the denial of benefits, we think it appropriate to address further that which we alluded to in footnote 1, *supra*. In granting summary judgment in favor of Rizzo, the district court concluded on the basis of the parties' arguments and the absence of precedent interpreting the Supreme Court's *Firestone Tire* decision that the applicable standard for reviewing Caterpillar's denial of benefits under ERISA § 1132(a)(1)(B) was "abuse of discretion."[2] This circuit recently stated, however, that the "arbitrary and capricious" standard of review still governs when the plan administrator is given discretion such as that afforded Caterpillar under the Plan. *See Egert*, 900 F.2d at 1035 (citing *Reilly v. Blue Cross & Blue Shield United of Wisconsin*, 846 F.2d 416, 419 (7th Cir.), *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988)); *see also Sisters of the Third Order v. Group Health Benefit Trust*, 901 F.2d 1369, 1371 (7th Cir.1990) (deferential review "when trust instrument insulates the trustee's decision from searching review"). Our remand of these proceedings, therefore, necessarily includes instructions to review Caterpillar's denial of benefits consistent with this precedent.

### III.

For all of these reasons, we believe that summary judgment in favor of Mr. Rizzo was inappropriate. *See Brown v. Retire-*

*ment Committee of Briggs & Stratton*, 797 F.2d 521 (7th Cir.1986) ("If a study of the record reveals that inferences contrary to those drawn by the trial court might be permissible, then summary judgment should be reversed.") (quoting *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985)). Accordingly, we REVERSE the district court's grant of summary judgment in favor of Mr. Rizzo and REMAND to the district court for further proceedings consistent with this opinion.

---

**2.** In *Firestone Tire*, the Supreme Court changed the law regarding the standard of review for denials of pension benefits under § 1132(a)(1)(B) in certain situations. Rejecting the "arbitrary and capricious" standard which had governed in this and other circuits, the Court stated, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard *unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan*." 489 U.S. at 115, 109 S.Ct. at 956 (emphasis added). The standard to be applied in the situation highlight-

ed above was not expressly addressed by the Court, except for the following language: "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor[ ] in determining whether there is an *abuse of discretion.'*" *Id.* (emphasis added) (quoting Restatement (Second) of Trusts § 187, comment d (1959)). Focusing upon this language, the parties and, in turn, the district court concluded that "abuse of discretion" was the appropriate standard in situations such as this where the plan administrator is given discretion to determine eligibility.