927 F.2d 607
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Dee FARMER, Plaintiff-Appellant,
v.
Dr. HAAS, Edward Brennan and L.E. Dubois, Defendants-Appellees.
 No. 90-1088.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 14, 1991.*
Decided March 1, 1991.
 
 Appeal from the United States District Court for the Western District of Wisconsin, 89 C 524, John C. Shabaz, Judge.
 W.D.Wis.
 REVERSED AND REMANDED.
 
 ORDER
 
 1
 Appellant Dee [Douglas] Farmer is a transsexual inmate in the federal correctional system.[1] On May 30, 1989, Farmer filed a Bivens action, Bivens v. Six Unknown Agents, 403 U.S. 388 (1971), alleging that her eighth amendment right to be free from cruel and unusual punishment was violated by prison authorities at the Federal Correctional Institution, Oxford, Wisconsin (Oxford) when they denied her any and all forms of medical treatment for her disease.[2] Farmer appeals from the district court's grant of summary judgment in favor of the defendants and the denial of her motion for reconsideration.
 
 I. FACTS
 
 2
 Farmer was originally incarcerated at the United States Penitentiary, Lewisburg, on November 17, 1986, where her transsexualism was medically documented. While in Lewisburg, a panel of three physicians decided that it would not continue Farmer's pre-incarceration treatment of her transsexualism by the ingestion of conjugate estrogen hormones because the risks outweighed the benefits. Instead, these doctors believed that psychotherapy would be the proper treatment.
 
 
 3
 From January 4, 1988 to March 9, 1989, Farmer was incarcerated at Oxford. Shortly after her transfer to Oxford, Farmer saw Dr. Imp, a psychologist, and requested some form of treatment for her transsexualism. Contrary to the information contained in Farmer's medical records, Dr. Imp diagnosed Farmer as a transvestite, not a transsexual, and, therefore, found that she was not entitled to any treatment. Farmer has submitted evidence that she unsuccessfully attempted, through a number of means, to get some form of treatment for her disease. A chronology of these efforts is necessary for the resolution of this appeal.
 
 
 4
 On January 20, 1988, Farmer filed an "Inmate Request to Staff Member" (IRSM) form directed to the psychology department requesting treatment. In this request, Farmer stated that she disagreed with Dr. Imp's diagnosis, noting that her records already contained the diagnosis of transsexualism, and claimed an entitlement "to some form of treatment." On February 1, 1988 Farmer presented Dr. Reed, an Oxford physician, with a falsified court order stating that she was allowed to receive an estrogen hormone prescription. Richard Haas,[3] the Health Services Administrator at Oxford, suspected that the order was fraudulent. An investigation into this incident was conducted, and Farmer was disciplined.
 
 
 5
 On February 4, 1988, Farmer delivered a letter to Mr. Haas, again challenging Dr. Imp's conclusion. This letter stated: "If you deny me estrogen you must give me some form of treatment for transsexualism. And, I hereby request some form of treatment; whether it be estrogen or otherwise." On the same day, Farmer submitted another IRSM, this time directed to both Haas and Dr. Reed. Farmer again noted her disagreement with Dr. Imp and stated that if hormones were not administered, she was entitled to some type of treatment. On February 12, 1988, Farmer again filed a IRSM addressed to Haas which stated: "I am hereby requesting that I be give [sic] some form of treatment, whether it be counseling, estrogen or etc." The district court record does not contain any responses to these requests.
 
 
 6
 On June 22, 1988, Farmer filed a "Request for Administrative Remedy" with Oxford Warden Edward Brennan.[4] This claim raised several issues. Farmer specifically claimed that all treatment had been denied. For clarification, she stated:
 
 
 7
 Donot [sic] confuse this issue as the issue in Farmer v. Carlson 87-0215 (that prison officials was indifference [sic] to serious medical need by not providing conjugated estrogen). Rather that prison officials are indifferent to a serious medical need by not providing any treatment.
 
 
 8
 On July 8, 1988, Brennan denied the request for relief, commenting only on the decision to deny estrogen treatment. Farmer appealed. She presented the identical claim to Regional Administrator L.E. DuBois who denied the Regional Appeal on August 12, 1988. DuBois stated: "Our investigation reveals that your allegations were adequately addressed at the institutional level, therefore, we can offer no further relief. Therefore, your Regional Appeal in denied."
 
 II. PROCEDURAL POSTURE
 
 9
 On October 31, 1989, the district court granted summary judgment to the defendants based only on the defendants' motion and attachments. Although it had granted Farmer an extension in which to respond to the motion, the court apparently overlooked this later scheduling order and decided the motion prior to receiving Farmer's response. The defendants conceded that they were well aware of Farmer's condition. They contended that they had decided that psychological therapy was the appropriate treatment, but that Farmer never requested psychological services. "Such therapy was widely available to plaintiff ..., but plaintiff failed to take advantage of these services. Thus, plaintiff's claim based on deliberate indifference to a serious medical condition is without merit and should accordingly be dismissed." (Record, No. 9).
 
 
 10
 The district court recognized that transsexualism is a serious medical disease within the meaning of the eighth amendment, and that inmates, although not entitled to a particular type of treatment, are entitled to some type of treatment for the affliction. Meriwether v. Faulkner, 821 F.2d 408 (7th Cir.1987), cert. denied, 108 S.Ct. 311 (1987). In finding that the defendants were not deliberately indifferent, the court stated:
 
 
 11
 In plaintiff's case medical personnel at FCI-Oxford after evaluating plaintiff decided to follow the recommendation of medical personnel at the United States Penitentiary, Lewisburg. They decided that estrogen therapy was risky to plaintiff's health and that psychotherapy was the best treatment for plaintiff's transsexualism. This treatment option provided plaintiff with medical treatment for his serious medical need under Meriwether. Plaintiff's disagreement with the type of treatment offered does not rise to the level of an Eighth Amendment violation. The Court finds as a matter of law that plaintiff's Eighth Amendment rights were not violated by the defendants.
 
 
 12
 It was evidently the conclusion of the district court that the defendants did indeed offer psychotherapy to Farmer which she rejected.
 
 
 13
 On November 1, 1989, the district court received Farmer's timely response to defendant's motion for summary judgment and "cross-claim" for summary judgment in her favor with supporting documentation. The supporting documentation contained copies of all of Farmer's institutional and administrative requests for treatment. In addition, some documents referred to Dr. Imp's misdiagnosis. In reply, the defendants again claimed that Farmer failed to avail herself of the psychological services available. In addition, they argued that Dr. Imp's "misinformed diagnosis" did not constitute a constitutional violation.
 
 
 14
 The district court, in an order dated November 3, 1989, again granted summary judgment to the defendants. The district court held:
 
 
 15
 In plaintiff's case he was evaluated by medical personnel at the United States Penitentiary in Lewisburg, Pennsylvania. It was decided that estrogen therapy was risky to his health and psychotherapy was recommended. The defendants followed this treatment plan which satisfied the Meriwether requirement.
 
 
 16
 Plaintiff now argues that he is not satisfied with the one time he sought psychological counseling. In January 1988 he saw Dr. Imp. who told him he was a transvestite not a transsexual. Dr. Imp's perception of plaintiff as a transvestite was an uninformed diagnosis according to plaintiff's medical record. However, this incorrect diagnosis does not rise to the level of deliberate indifference to plaintiff's transsexualism. Plaintiff could easily have sought psychological counseling after January 1988 from other health service personnel at the institution.
 
 
 17
 The named defendants evaluated plaintiff's condition and recommended psychological treatment for him. They were not deliberately indifferent to plaintiff's serious medical need under Estelle. The Court finds as a matter of law that plaintiff's Eighth Amendment rights were not violated by the defendants.
 
 III. ANALYSIS
 
 18
 We review a grant of summary judgment de novo, examining the record and reasonable inferences drawn therefore in the light most favorable to the nonmoving party to determine whether there are any genuine issues of material fact. "If there are such issues, summary judgment may not be granted. In the absence of any such issues, we determine whether the moving party is entitled to judgment as a matter of law." Rizzo v. Caterpillar, Inc., 914 F.2d 1003, 1006 (7th Cir.1990) (citing Thomas v. United Parcel Service, Inc., 890 F.2d 909, 914 (7th Cir.1989)).
 
 
 19
 Farmer argues that summary judgment was inappropriate because there are material facts in dispute. Farmer specifically disputes the district court's determination that psychological treatment was available to her, but that she failed to request such services.
 
 
 20
 The defendants contend that summary judgment was appropriate. They also argue, in the alternative, that even if Farmer states an eighth amendment claim, the named defendants were not responsible for the deprivation of medical treatment.
 
 
 21
 A. The Eighth Amendment Claim.
 
 
 22
 Deliberate indifference to an inmate's medical needs is a violation of the eighth amendment proscribing cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). However, the constitution does not protect prisoners against mere inadvertence or negligence in diagnosis or treatment. Id. at 105-06. This court has recognized that transsexualism is a severe psychiatric disorder and that the failure to provide incarcerated transsexuals with any type of treatment constitutes an eighth amendment violation. Meriwether, 821 F.2d at 413. An eighth amendment violation will not be found when the inmate merely disagrees with the type of treatment offered. A violation occurs "in a case where there had been a total failure to provide any kind of medical attention at all." Id. at 414.
 
 
 23
 The district court held that the defendants determined that psychological therapy was the appropriate method of treatment for Farmer and that the "defendants followed this treatment plan which satisfied the Meriwether requirement." In support of this conclusion, the district court noted that Farmer had been seen by Dr. Imp who misdiagnosed Farmer's condition. However, "[p]laintiff could easily have sought psychological counseling after January 1988 from other health service personnel at the institution."
 
 
 24
 These conclusions are not supported by the record. Farmer has produced evidence that she made many requests for treatment after she was seen by Dr. Imp. In these requests, she specifically disputed Dr. Imp's findings, referring to her medical records which already contained a well-documented history of her transsexualism. Although it is clear from the record that Farmer preferred to receive estrogen treatment, she repeatedly asked for other treatment if estrogen was denied. Nothing in the record supports the district court's conclusion that any prison officials formulated, much less followed, any treatment plan.[5] Instead, the record in this case indicates that Farmer requested, but was systematically denied, any form of treatment for her transsexualism.
 
 
 25
 The defendants also argue that although they were fully aware of Farmer's transsexualism, Dr. Imp's incorrect diagnosis of Farmer's disease shortly after she was transferred to Oxford shields them from liability under the eighth amendment. It is true that mere negligence in diagnosing an illness does not rise to the level of a constitutional violation. Estelle, supra. However, there is no evidence in the record which suggests that the defendants ever relied on Dr. Imp's erroneous diagnosis. On the contrary, the defendants argued that Oxford officials were aware of the ailment and offered a treatment plan. Farmer is not suing Dr. Imp. She is suing those who she alleges had knowledge of her condition, but refused to provide her with any type of treatment. The defendants do not contend that they ever denied Farmer treatment because they relied on this misdiagnosis; therefore, they cannot use Dr. Imp's negligence as a shield for their actions.
 
 
 26
 To summarize, the record supports Farmer's position that she consistently requested, but was denied, any type of treatment for her transsexualism. The defendants did not submit any competent evidence to rebut the evidence that Farmer presented to the district court. In light of the record before this court, we must conclude that the district court could not, as a matter of law, grant summary judgment to the defendants. Farmer has not argued that the record entitles her to summary judgment, and we do not reach that proposition.
 
 
 27
 B. Liability of the Named Defendants.
 
 
 28
 The appellees also argue, in the alternative, that they did not cause Farmer's alleged deprivation because they were not personally involved, and, therefore, liability cannot be imputed to them. The defendants presented this argument to the district court on several occasions. The district court held that under Smith v. Rowe, 761 F.2d 360 (7th Cir.1985), each of the named defendants had sufficient knowledge about Farmer's medical concerns to support a finding of personal involvement.
 
 
 29
 The Smith decision involved a 42 U.S.C. Sec. 1983 action which is analogous to a Bivens type action. In Smith, this court explained the personal involvement requirement.
 
 
 30
 To recover for damages under 42 U.S.C. Sec. 1983, a plaintiff must establish defendant's personal responsibility for the claimed deprivation of a constitutional right. Duncan v. Duckworth, 644 F.2d 653, 655 (7th Cir.1981). However, a defendant's direct participation in the deprivation is not required. An official satisfies the personal responsibility requirement of section 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.
 
 
 31
 Smith, 761 F.2d at 369 (citing Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir.1982)). Each of the named defendants had knowledge of Farmer's complaint that she was receiving no treatment for her transsexualism. Yet, none of these officials took any steps to rectify the situation. At the least, their action or inaction resulted in the continued deprivation of treatment. Therefore, we agree with the district court that, based on the record before us, each of the named defendants had the requisite personal involvement with the alleged deprivation.
 
 IV. CONCLUSION
 
 32
 The district court erred in granting summary judgment to the defendants. The documentation submitted by Farmer supports her position that, despite requests, she was denied any and all forms of treatment for her transsexualism in violation of the eighth amendment. We agree with the district court that Farmer has proven facts sufficient to show that all named defendants were personally involved in the deprivation.
 
 
 33
 For these reasons, the judgment appealed from is REVERSED and the cause is REMANDED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Dee Farmer was born a male. The record reflects that prior to incarceration, Farmer was a pre-operative transsexual (preparing for a sex change operation) who had silicon implants, had attempted to have his testicles surgically removed and was receiving conjugated estrogen hormone pills. Farmer prefers the use of feminine pronouns for self-description, and we will respect this choice
 
 
 [2]
 Farmer also alleged a violation of the equal protection clause. Specifically, she claimed that transsexual inmates housed in low security institutions were allowed to continue estrogen treatment; whereas, she was denied estrogen treatment while being incarcerated at a medium to maximum security prison. Farmer does not appeal the district court's denial of this claim
 
 
 [3]
 The caption and the district court orders refer to Mr. Haas as Dr. Haas. However, in their answer to the complaint, the defendants deny that Haas is a doctor. In Haas' declaration attached to the defendants' motion for summary judgment, he describes his duties as including "the responsibility for supervision over all aspects of the medical department and the delivery of health services at FCI, Oxford."
 
 
 [4]
 During this intervening time period, Farmer filed an administrative complaint challenging the decision not to give her estrogen treatment. On February 12, 1988, Farmer also filed a civil suit in the Western District of Wisconsin, Dee Farmer v. Edwin Meese, Michael Quinlan, E.J. Brennan, and Mr. Hass [sic], No. 88 C 110. She alleged, in part, that the defendants were deliberately indifferent by failing to prescribe the estrogen. The court found this claim to be precluded by the order in Farmer v. Carlson, No. 87-0215, from the United States District Court for the Middle District of Pennsylvania, which decided the same issue by denying relief to Farmer. That case challenged only the denial of estrogen, not the denial of all types of treatment
 
 
 [5]
 The district court relied on the declarations attached to the defendants' motion for summary judgment for its conclusions. On close reading, these affidavits do not support the district court's findings
 Dr. Reed's affidavit stated that he read the report from the physicians in Lewisburg and agreed that "the proper treatment for individuals like inmate Farmer remains in the providence [sic] of psychotherapy, not in hormonal or surgical manipulation." Reed's declaration concludes that Farmer should not be given hormones. Nothing in Reed's declaration indicates when he reviewed the Lewisburg report. Nor does this affidavit suggest that he, or other personnel, took any action or formulated an alternative treatment plan based on the Lewisburg recommendation.
 The declaration of Dennis Schimmel states that inmates are informed "during the admission and orientation process that counseling and other psychological services are available to them through the Psychology Services Department." That such services were available does not support the conclusion that Farmer failed to request them. This affidavit contains no information about the procedures, if any, an inmate must follow to receive such services.
 Mr. Haas states in his affidavit that to the best of his recollection, Farmer never made a written request to him for treatment. However, that statement was made "without the benefit of thoroughly reviewing inmate Farmer's Medical File which is where such a written request would be filed." Contrary to Haas' recollection, the district court record contains several requests addressed to Haas for treatment. No responses to these requests are found in the record.
 In short, we can find nothing in the record which demonstrates that Oxford personnel prepared a plan of treatment which was made available to Farmer. Nor is there any explanation in the record why Farmer's requests for treatment were denied. The defendants did not offer any evidence to counter the documentary evidence supplied by Farmer with her brief in opposition to summary judgment.