**Stephen W. EDWARDS,
Plaintiff–Appellant,**

v.

**MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,
Defendant–Appellee.**

No. 89–3772.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1990.

Decided June 25, 1991.

Steven R. Hansen, Chicago, Ill., George T. Drost, Arlington Heights, Ill., for plaintiff-appellant.

David J. Novotny, J. Robert Geiman, William A. Chittenden, III, Thomas P. Boylan, Peterson & Ross, David E. Springer, Timothy A. Nelsen, Skadden, Arps, Slate,

Meagher & Flom, Chicago, Ill., for defendant-appellee.

Before FLAUM, EASTERBROOK and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Stephen Edwards was a general agent of Massachusetts Mutual Life Insurance Company (the "company"). After serving the company for several years in that capacity, Edwards agreed to early retirement. Now Edwards sues, claiming misrepresentation and breach of contract with regard to his retirement benefits. The district court granted summary judgment for the company. Edwards appeals, and we affirm.

## I.

Edwards became a general agent for the company in 1982. The contract he signed to enter into this relationship was terminable at-will by either party. It would also terminate automatically upon Edwards' death, or upon his reaching age 65. Edwards was responsible for overseeing premium sales and for recruiting new agents. There is some question as to how well the agency performed under Edwards, but he did have some successful partial-year periods. In 1983, one of the company's financial consultants met with Edwards, and they agreed the agency needed improvement.

Edwards and the company then began to discuss early retirement. At a meeting on January 27, 1984, Edwards discussed with Joseph Shomsky, a vice-president for the company, Edwards' plan regarding his successor as general agent. Shomsky told Edwards to pursue his idea. Edwards' plan, as discussed more fully in a September meeting with Shomsky, was to make Mike Smith a co-general agent in April 1985 and to retire five years later in April 1990. This idea was accepted and the company hoped the agency would improve.

But apparently the agency did not prosper. The company denied Edwards' request to be allowed to participate in a deferred compensation plan, citing substandard cash flow. Then in January 1986, Kenneth Fry, a senior vice-president with the company, told Edwards that the company would not allow Edwards to become president of the General Agents' Association because the company thought Edwards would project the wrong image.

Fry suggested an early retirement date of April 1, 1988. Fry told Edwards that if Edwards reached a goal of $1 million in first-year commissions for 1987, he could retire with benefits even though he would only be 55 years old. Edwards formed the impression that the company wanted to get rid of him, and that if he did not go along with the plan of early retirement, he would be terminated.

On February 20, 1986, Fry sent Edwards a letter containing the terms discussed at their previous meeting. Edwards accepted the offer by signing the letter and returning it to Fry. On April 18, 1986, a financial consultant for the company sent Edwards a letter setting forth pay-out details of the early retirement plan should Edwards qualify at the end of 1987. The calculations were based on a 25% reduction in certain amounts for early retirement pursuant to the retirement plan, as modified by a board resolution. Edwards disputed this reduction and inquired as to whether he would qualify for full retirement benefits.

The company's General Agents' Retirement Plan provides for a "normal retirement date" of the first day of the month following the agent's 65th birthday. However, the plan also allows for early retirement for general agents who are age 60 and have at least 20 years of service as a general agent with the company, with reduced benefits because of early retirement. A board resolution modified the retirement plan to provide that general agents retiring at age 60 with 20 years of service would not have any reduction in benefits because of early retirement. It also provided that general agents who had not attained age 60 but who had 15 years of service could retire early, but certain benefits would be reduced by at least 25%.

On April 13, 1987, the company waived the requirement that Edwards have first-

year commissions in excess of $1 million in order to qualify for early retirement. Edwards elected early retirement on April 23, 1987. Edwards eventually executed documents formally electing early retirement effective April 1, 1988. At the time he executed those documents, his request for waiver of the 25% reduction had been denied two times by the president of the company. Edwards met with the financial consultant to review his estimated retirement benefits, which were based on the 25% reduction for early retirement.

Edwards sued in state court on February 6, 1989, and the company had the case removed to federal court under the authority of 28 U.S.C. § 1441(a), the district court having original jurisdiction based on diversity. The suit was brought in two counts.

The first count was based on breach of contract. Edwards claimed the company breached the implied covenant of good faith and fair dealing that is part of the contract pursuant to Massachusetts law, which governs this agreement. The second count was based on misrepresentation. Edwards alleged that the company concealed the plan to force him into early retirement. If he had known that the company was seeking to get rid of him, he alleged, he would not have made certain expenditures that he ended up making.

The company moved for summary judgment, which was granted by the district court. The district court found that Edwards could not recover under the first count because his claim did not fit under the special exception to the general at-will rules on termination. The court also found that Edwards could not maintain a claim for misrepresentation because he knew that the company was trying to get rid of him. The court noted that this would negate any reasonable reliance requirement in any such claim. The court also noted that Edwards attempted to change his claim into one alleging the company deceived him into believing he would retire without the 25% reduction in benefits. The court noted that this claim had nothing whatsoever to do with Edwards' own complaint in this case.

Edwards appeals the district court's decisions, alleging that the district court erred in granting summary judgment in favor of the company. Edwards argues that the 25% reduction in certain retirement benefits was compensation for past services, and that there were other facts which were disregarded by the district court when the court held that Edwards' knowledge would preclude any misrepresentation claim.

## II.

■ We review *de novo* the district court's grant of summary judgment. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 234 (7th Cir.1991). We apply the same standard as the district court and will affirm the summary judgment only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.*

We comment at the outset that it is possible Edwards was not damaged at all. As noted during oral argument, making certain assumptions about life expectancy, the present value of the retirement benefits (with 25% reduction) that Edwards received by retiring at age 55 is greater than the present value of the full retirement benefits he would have received by retiring at age 65. But because there is uncertainty regarding the defendant's potential income in those intervening ten years should he have kept working, we do not base our decision on this calculation.

■ Count I was for breach of the implied terms of good faith and fair dealing imputed into contracts by Massachusetts law. Edwards claims on appeal that the 25% reduction in benefits denied him future compensation for past service. Massachusetts law recognizes an implied covenant of good faith and fair dealing in at-will employment contracts. *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251, 1256 (1977). As the parties recognize, this doctrine has thus far been limited to cases where an employee was discharged to deny future compensation for past services or for a reason that violates public policy. *See, e.g., Demars v.*

*General Dynamics Corp.*, 779 F.2d 95, 100–01 (1st Cir.1985).

A party may recover if the breach caused the party to lose "reasonably ascertainable future compensation based on past service." *Cort v. Bristol–Myers Co.*, 385 Mass. 300, 431 N.E.2d 908, 911 (1982). But the district court found that Edwards' claims were solely for future services, and were thus not covered by the *Fortune* limitation on the general rule for at-will employment relationships.

Edwards' complaint alleged that the company's motive in forcing him into early retirement was that it would save "several hundred thousand dollars annually in commissions and fees which would, under the agreement of the parties [ ] otherwise have inured to Edwards." Edwards also alleged that the company, by seeking to achieve its objectives, took "for itself money and opportunities that would rightfully belong to Edwards." Edwards also pointed to the motive in his brief in opposition to summary judgment, where he noted that the company would save substantial amounts in commissions by replacing independent agents like himself with "Formula Agents."

We agree with the district court's characterization of Edwards' allegations in count I of his complaint: that the company wanted to get rid of Edwards because it could get someone to do his job for less money. Edwards' claims in his complaint are for future services, and these are not the types of claims that fit within the *Fortune* exception to the general at-will rules. Edwards' complaint did not allege that he was denied future compensation for past services.

Edwards' other argument on appeal is that the district court ignored issues of material fact in concluding that Edwards' knowledge precluded any misrepresentation claim. But Edwards does not dispute the one thing upon which the district court's conclusion was based; namely, that Edwards knew as early as January of 1986 that the company was planning to get rid of him. This is the key to the district court's conclusion. Edwards claims that the district court "disregarded other material facts in the record." But without disputing his knowledge regarding the intention to get rid of him, Edwards cannot prevail on any misrepresentation claim, and the district court properly decided that Edwards' knowledge precluded any misrepresentation claim because there could be no reasonable reliance.

### III.

For the foregoing reasons, the district court's grant of summary judgment in favor of Massachusetts Mutual Life Insurance Company is AFFIRMED. We decline to impose sanctions under Federal Rule of Appellate Procedure 38, but tax the costs of this appeal to Edwards.