**Nick RUSSO, Plaintiff–Appellant,**

v.

**HEALTH, WELFARE & PENSION FUND, LOCAL 705, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Defendant–Appellee.**

No. 91–3794.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1992.

Decided Jan. 12, 1993.

Donald L. Bertelle (argued), Chicago, IL, for plaintiff-appellant.

Sherman Carmell (argued), Carmell, Charone, Widmer, Mathews & Moss, Chicago, IL, for defendant-appellee.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

KANNE, Circuit Judge.

This case involves a dispute over retirement benefits. The plaintiff, Nick Russo, was a Teamster who had participated in the Union Local 705 Pension Fund ("the Fund") from its inception. In October 1981, a back injury disabled Mr. Russo and he has never been able to work again. Mr. Russo has received disability benefits from the Fund since 1983; however, this dispute arose because the Fund refused to increase his benefit level pursuant to his 1988 request.

A brief description of the Fund and its governing documents is necessary in order to address the issues raised by Mr. Russo's complaint. When Mr. Russo initially applied for pension benefits, two documents governed the Fund: the Second Amended Trust Agreement ("the Trust Agreement") and the 1976 Plan ("the Plan"). The Plan provided four types of pension benefits: normal retirement, early retirement, disability retirement, and deferred vested retirement. Each retirement level had specific service requirements, and all but disability retirement had an age requirement.[1]

---

1. Normal retirement required an employee to retire after attaining age 65 and completing 20 years of service. Early retirement was available for employees who retired on or after age 57 and had 20 years of service. Disability retirement was available if an employee had 15 years of service and was deemed "disabled." Deferred Vested retirement was available to all employees who had completed 10 years of ser-

Normal retirement paid the highest amount of benefits, followed by early retirement, disability retirement and deferred vested retirement. The Fund's Trust Agreement gave the Trustees discretion to construe the terms of the Plan and make binding benefits decisions.

According to Mr. Russo, in early 1982 he went to see Lewis Peick, the Administrator of the Fund at that time, to inquire about his pension benefit options. Allegedly Mr. Peick told Mr. Russo, "You come back and show me them papers from the government that you got social security and I'll give you your disability. And when you become of age, I'll put you on your pension." In April 1983, Mr. Russo was awarded Social Security disability benefits by an administrative law judge. Mr. Russo immediately took his disability check to Mr. Peick and shortly thereafter began to receive disability pension benefits from the Fund.

Presumably in 1983, Mr. Russo and Mr. Peick agreed that Mr. Russo was not eligible for early retirement because although he met the service requirement, he did not meet the age requirement. At the time he was disabled, Mr. Russo had over twenty years of vesting service, but was only 54 years old. Hence, Mr. Russo accepted the disability pension benefits without complaint. However, the problem was that Mr. Peick left Mr. Russo with the impression that when Mr. Russo reached age 57 he would begin to receive the higher benefit amount pursuant to the early retirement provision of the Plan.

In 1988, after he had reached age 57, Mr. Russo asked Frank Abbate, the current pension analyst, to convert his disability pension to an early retirement pension pursuant to Section 4.2 of the Plan. When Mr. Russo's request was denied, he retained an attorney who wrote to the Fund requesting an explanation for the adverse decision. In a letter dated August 31, 1989, the current administrator of the Fund, Daniel Ligurotis, explained the Fund's position as follows:

> Section 4.2 of the 1976 Plan expressly states that the employee "shall be eligible for an Early Pension" if, *at the date of retirement,* he/she has attained both age 57 and at least twenty years of vesting service. Thus, Mr. Russo could not have become eligible for an early retirement pension where he attained age 57 after retirement and while retired. *(emphasis added)*[2]

On September 18, 1989, Mr. Russo appealed to the Board of Trustees, arguing that he had not "retired" when he went on disability, but merely left covered employment because he was disabled. Mr. Russo also told the Board of Mr. Peick's earlier "promise" to convert him to early retirement benefits. The Trustees upheld the administrator's determination, reasoning that "retirement" in the Plan included employees, like Mr. Russo, who left employment because of disability. The Trustees' decision was partially based on the fact that the Plan referred to pension paid for disability as "Disability Retirement." Sections 2.3(e) & 4.3. Thus, since Mr. Russo was not 57 when he "retired," he was not eligible for early retirement benefits.

Following the Trustees' decision, Mr. Russo filed a complaint in federal district court asserting an ERISA claim. After discovery, the Fund moved for summary judgment. In response, Mr. Russo filed an amended complaint restating his ERISA claim and adding pendent state law claims of estoppel, breach of duty and misrepresentation. The Fund renewed its motion for summary judgment. The district court granted the motion with respect to the ERISA claim and dismissed the state law claims as preempted by ERISA. In granting the defendant's summary judgment motion, the district court held that the Trust-

---

vice, but benefits were not paid until after the employee reached age 57.

**2.** Section 4.2 of the Plan reads:

An Employee shall be eligible for an Early Pension upon retirement on or after his 57th birthday and completion of 20 or more years of Vesting Service. Payment of an Early Pension shall commence as of the first day of any month selected by the Employee between the date of retirement and Normal Retirement Date or the date of application whichever is the later.

ees' decision was not arbitrary or capricious, and that since Mr. Russo had not suffered a detriment, the Trustees were not estopped from denying him increased benefits. In this timely appeal, Mr. Russo argues that the district court erred in both holdings. We disagree and affirm.

## I.

■ We review a grant of summary judgment *de novo*. *Rizzo v. Caterpillar, Inc.*, 914 F.2d 1003, 1006 (7th Cir.1990). "We apply the same standard as the district court and will affirm the summary judgment only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Edwards v. Massachusetts Mutual Life Ins. Co.*, 936 F.2d 289, 291 (7th Cir.1991). Moreover, we view the record in the light most favorable to the party opposing the motion. *Rizzo*, 914 F.2d at 1006.

■ When Trustees have discretion to construe pension plan terms and allocate benefits, judicial review is limited to whether their decision was arbitrary and capricious. *Saracco v. Local Union 786 Building Material Pension Fund*, 942 F.2d 1213, 1214 (7th Cir.1991); *Rizzo*, 914 F.2d at 1008. In other words, as long as the Trustees' decision was based on a reasonable interpretation of the plan's language and the evidence in the case, we will not disturb it. *Saracco*, 942 F.2d at 1215; *Exbom v. Central States, Southeast & Southwest Areas Health & Welfare Fund*, 900 F.2d 1138, 1143 (7th Cir.1990). Because the Fund's Trust Agreement clearly gave the Trustees discretion to construe the terms of the Plan and make final benefit decisions,[3] Mr. Russo can only prevail if the Trustees' refusal to convert his disability pension to an early retirement pension was arbitrary and capricious.

■ Even reading the record in a light most favorable to Mr. Russo, we cannot conclude that the Trustees' decision was arbitrary and capricious. We agree with the district judge's assessment:

> And here it is clear that [the] challenged interpretation is reasonable. The Plan language may reasonably be read to require that "retirement on or after his 57th birthday" occur as a precondition to an early pension. This is particularly so because the Plan specifically provides deferred vested retirement for one who retires before age 57.

*Russo v. Health, Welfare & Pension Fund*, 777 F.Supp. 1429, 1430 (N.D.Ill.1991) (citation omitted). *See Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210 (6th Cir.), *cert. denied*, 484 U.S. 820, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987) (holding that an analogous interpretation of a comparable pension plan provision was not arbitrary or capricious). In addition to reasonably interpreting the Plan's language, the Trustees also considered relevant factual information including Mr. Peick's alleged misrepresentation and the fact that no other employee had ever converted from a disability pension to an early retirement pension.

Mr. Russo does not argue that the Trustees' reading of Section 4.2 was unreasonable. Nor does Mr. Russo argue that irregular procedures tainted the decision making process. Instead, Mr. Russo makes three different arguments. First, he argues that the Trustees' action was arbitrary because it reversed Mr. Peick's earlier "interpretation" of the Plan allowing him to convert, which Mr. Russo insists was also a reasonable reading of section 4.2. The flaw with Mr. Russo's argument is that Mr. Peick did not truly "interpret" the plan. Allegedly Mr. Peick said, "when

---

**3.** The Trust Agreement provides:

All questions or controversies ... as to any claim for any benefits preferred by any employee ... [or] as to the construction of the language or meaning of the pension plan, or rules and regulations adopted by the Trustees ... or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund ... shall be submitted to the Trustees for decision initially or by appeal ... and the decision of the Trustees, shall be binding upon all persons dealing with the Trust Fund or claiming any benefit thereunder.

Local 705 International Brotherhood of Teamsters Pension Trust Fund, Second Amended Trust Agreement (1975). Article 5, § 2.

you become of age, I'll put you on your pension." If anything, Mr. Peick's statement was a promise to interpret the plan a certain way once Mr. Russo reached age 57. An "interpretation" of the plan would necessarily involve a benefit determination. Mr. Peick never converted Mr. Russo's disability pension into an early retirement pension. Therefore, the Board did not arbitrarily "reverse" Mr. Peick's "interpretation" because he never actually made one.

Second, Mr. Russo argues that the Trustees' decision was arbitrary because the Plan did not expressly prohibit an employee from converting a disability pension into an early retirement pension once he reached age 57. This argument misconstrues the arbitrary and capricious standard of review. "Although it is an overstatement to say that a decision is not arbitrary or capricious whenever a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement." *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir.1985). The standard only requires that the Trustees' decision make sense. As discussed, the Trustees' decision was based on a reasonable interpretation of Section 4.2 and an adequate consideration of the relevant factual circumstances. Thus, we will not disturb their decision even though Mr. Russo's interpretation could have been permissible under the Plan.

Third, Mr. Russo claims that because the Plan was not uniformly construed and applied by the Trustees, they acted in an arbitrary and capricious manner. Uniform interpretation and application of plan rules are important factors in deciding whether a denial of benefits is arbitrary and capricious. *See Fuller v. CBT Corp.*, 905 F.2d 1055, 1060 (7th Cir.1990) (case remanded to determine whether trustees had granted the same benefits to some employees while denying them to the plaintiff); *Sly v. P.R. Mallory & Co., Inc.*, 712 F.2d 1209, 1213 (7th Cir.1983) (uniform interpretation defeats arbitrary and capricious claim). However, Mr. Russo failed to provide any evidence that the plan was not uniformly interpreted. In fact, as Mr. Russo himself points out, according to Frank Abbate, the

pension analyst, no employee has ever been permitted to convert a disability pension into an early retirement pension upon reaching age 57.

There is evidence that some employees have recovered from their disabilities, gone back to covered employment, and then received early pension when they retired after age 57. Mr. Abbate stated:

> We've had some cases where a man went on disability pension for whatever reason. He improved enough, though, to go back to work, put in enough time to reestablish himself in the pension fund, and then retired.

However, this fact does not suggest an inconsistent interpretation and application of the Plan; employees similarly situated are treated the same. All employees who take disability pension before age 57 and never return to work remain on disability pension for life. Those employees who are fortunate enough to recover from their disabilities and give more years of service to the company are permitted to receive early retirement because they were working when they reached age 57. Such a scheme is far from arbitrary and capricious.

We rejected a similar argument in *Sly*. In that case, many jobs were jeopardized when an employer sold its plant. The plaintiffs argued that the administrators of the employee welfare benefit plan acted arbitrarily by granting severance pay benefits to some former employees and denying them to others. 712 F.2d at 1213. We concluded that the administrators' decisions were not arbitrary because their decisions followed a uniform practice of denying severance benefits to employees who were immediately rehired by the purchaser of the plant and granting benefits to those who were not employed by the purchaser. *Id.* Likewise, in this case, the Trustees followed a uniform practice and made benefit decisions based on meaningful distinctions.

Because Mr. Russo has not presented any evidence to the contrary, we hold that the Trustees' decision denying him early

retirement benefits was not arbitrary or capricious.

## II.

■ Taking a different approach, Mr. Russo argues that even if the Trustees' decision was not arbitrary and capricious, the Trustees are estopped from denying him early retirement benefits because he detrimentally relied on Mr. Peick's oral promise to convert his disability pension.

Mr. Russo's state law estoppel claims are preempted by ERISA. *Lister v. Stark,* 890 F.2d 941 (7th Cir.1989), *cert. denied,* 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990). Hence, his estoppel argument is only viable if estoppel principles can be applied to ERISA benefit plans. As a general rule, ERISA does not recognize oral modifications of a written benefit plan which precludes the use of estoppel principles to alter ERISA plans. *See Rizzo,* 914 F.2d at 1007 n. 1; *Lister v. Stark,* 890 F.2d at 946; *Reiherzer v. Shannon,* 581 F.2d 1266, 1267 n. 1 (7th Cir.1978). *See also Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1163 (3rd Cir.1990); *Straub v. Western Union Telegraph Co.,* 851 F.2d 1262, 1265 (10th Cir.1988); *Nachwalter v. Christie,* 805 F.2d 956, 960–62 (11th Cir. 1986); *Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032, 1041 (2d Cir.1985), *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986). Mr. Russo attempts to circumvent this general rule via two separate routes.

First, Mr. Russo correctly points out that an exception to the general rule exists in this circuit. In *Black v. TIC Investment Corp.,* 900 F.2d 112, 115 (7th Cir.1990), we applied estoppel principles to a single-employer unfunded welfare plan. Mr. Russo urges us to extend the *Black* exception to this case. Because, as we explain below, Mr. Russo has not established the requisite elements of estoppel, we decline to decide whether estoppel can be applied to other ERISA plans.[4]

Second, Mr. Russo argues that estoppel is permissible because he relied on an oral *interpretation* of the Plan, not an oral modification. The Eleventh Circuit has recognized this distinction and applied estoppel principles to various ERISA benefit plans if the oral statement involved was an interpretation of a plan, not a modification. *Kane v. Aetna Life Insurance,* 893 F.2d 1283 (11th Cir.), *cert. denied,* 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990) (applying estoppel to medical benefits plan). *See also National Companies Health Benefit Plan v. St. Joseph's Hosp.,* 929 F.2d 1558 (11th Cir.1991) (estoppel applied to group medical benefits plan); *Simmons v. Southern Bell Telephone & Telegraph Co.,* 940 F.2d 614 (11th Cir.1991) (estoppel available to plaintiff challenging life insurance plan). Under the Eleventh Circuit's analysis, a plaintiff must prove that the relevant provision in the plan was ambiguous and that he relied on an oral interpretation of that ambiguous provision. *Simmons,* 940 F.2d at 617–18.[5] Mr. Russo invites us to adopt the Eleventh Circuit's reasoning.

---

4. In *Black,* we permitted the use of estoppel because doing so did not threaten the actuarial soundness of the single-employer welfare fund. We note, however, that our concerns about actuarial soundness expressed in *Black* would argue against applying estoppel to a multi-employer funded pension plan, such as this one. *See* 900 F.2d at 115. In this plan, the amount of pension benefit is tied to preconditions of age and service. If we accept Mr. Russo's contention, all employees who successfully asserted estoppel claims would be able to trade up pension benefits once they reach a certain age requirement. The actuarial assumptions upon which the plan was carefully crafted would no longer exist, thereby undermining the ability of the Fund to pay its promised levels of benefits.

5. Some circuits have discussed *Kane* but have expressly stopped short of adopting it. *Williams v. Bridgestone/Firestone, Inc.,* 954 F.2d 1070, 1073 (5th Cir.1992); *Law v. Ernst & Young,* 956 F.2d 364, 370, n. 9 (1st Cir.1992). Other circuits continue to reject the availability of estoppel without discussing the modification/interpretation distinction. *See Lott v. Hertz Custom Benefit Program,* 1992 WL 73061 at 5; 1992 U.S.App. Lexis 6828 at 4 (estoppel not available to ERISA plans); *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1163 (3rd Cir.1990) (no oral modifications of ERISA permitted).

However, even if we were to adopt this interpretation/modification distinction, Mr. Russo cannot meet the Eleventh Circuit's test. The test requires an ambiguous provision. Section 4.2 reads in part: "An Employee shall be eligible for an Early Pension upon retirement on or after his 57th birthday and completion of 20 or more years of Vesting Service." This language is not ambiguous—the employee must be 57 and have 20 years of service *when* he retires in order to qualify for an early retirement pension. *See Apponi,* 809 F.2d at 1219 (almost identical provision held not to be ambiguous). Moreover, as we demonstrate below, Mr. Russo has not established an estoppel claim. Therefore, because the facts of this case do not require us to decide whether the interpretation/modification distinction is a valid one in this circuit, we do not.

Instead, we conclude that Mr. Russo's appeal must fail because he has not established the existence of the elements of estoppel. "An estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." *Black,* 900 F.2d at 115. *Heckler v. Community Health Services, Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984); *Central States Trucking Co. v. J.R. Simplot Co.,* 965 F.2d 431, 435 (7th Cir.1992). Moreover, "[w]hether facts proven are sufficient to constitute an estoppel is a question of law properly before this court for review." *Jennings Water, Inc. v. City of North Vernon,* 895 F.2d 311, 316 (7th Cir.1989) (affirming summary judgment for defendant); *Prize Steak Products, Inc. v. Bally's Tom Foolery, Inc.,* 717 F.2d 367, 370 (7th Cir.1983) (affirming dismissal of plaintiff's claim for failure to establish the elements of estoppel).

Assuming, as we must, that Mr. Peick did make the alleged misleading representation, Mr. Russo has not shown that he suffered any detriment by relying on the statement. In 1981, when Mr. Russo was disabled at age 54, he was only eligible for two of the four types of pension benefits:

disability retirement payable immediately or deferred vested retirement payable once he reached age 57. *Supra,* note 1. Therefore, in order to receive any money before age 57, Mr. Russo had to choose disability benefits exactly as Mr. Peick advised. Our belief that, regardless of Mr. Peick's statement, Mr. Russo would have chosen disability over deferred vested retirement is strengthened by the fact that disability benefits would pay Mr. Russo a higher amount over his lifetime. Pursuant to the Plan's payment schedule, Mr. Russo had received $31,931.92 from the time he retired until June 1991. If he had elected deferred vested retirement, Mr. Russo would have only received $21,307.81 during the same period of time and would never have made up the difference.

Hence, in reliance on Mr. Peick's statement, Mr. Russo did exactly what he would have done if Mr. Peick had not promised to convert his benefits at a later date. Mr. Russo did not "change his position for the worse," as required under the principles of estoppel. *Heckler,* 467 U.S. at 59, 104 S.Ct. at 2223. In fact, on appeal, Mr. Russo does not argue that he would have chosen another pension benefits plan in 1983. Instead, Mr. Russo claims that he suffered a detriment because he did not attempt to go back to work in order to qualify for early retirement since Mr. Peick's statement indicated that returning to work was unnecessary. No evidence or argument that Mr. Russo could have returned to work was presented to the trial court. The district court specifically noted:

> There is, understandably, no claim that Russo recovered from his disability and could have returned to work in order to retire after his 57th birthday and would have done so if he had not been laboring under Peick's bad advice.

*Russo,* 777 F.Supp. at 1432 n. 5.

A review of the record suggests that Mr. Russo did not make this argument below because it would have been disingenuous. Mr. Russo admitted that he has been unable to work since his 1981 injury.[6] The

---

6. Pursuant to Local Rule 12(m), the defendants

set out uncontested material facts for the court

record also demonstrates that Mr. Russo has received Social Security disability checks from 1983 to the present without interruption. As a factual matter, it does not appear that Mr. Russo could have attempted a return to work. However, factual determinations are not necessary to dispose of this argument because Mr. Russo waived this argument by not making it below. "We have long refused to consider arguments that were not presented to the district court in response to summary judgment motions." *Cooper v. Lane,* 969 F.2d 368, 371 (7th Cir.1992). *Gustovich v. AT & T Communications, Inc.,* 972 F.2d 845, 848 (7th Cir.1992); *Manor Healthcare Corp. v. Guzzo,* 894 F.2d 919, 922 (7th Cir.1990). Therefore, because Mr. Russo did not suffer a detriment as required by estoppel principles, the district court properly granted summary judgment for the defendants.

### III.

Because the plaintiff has failed to establish a genuine issue of material fact and the defendants are entitled to judgment as a matter of law, we AFFIRM the district court's entry of summary judgment.

below. Paragraphs 14–17 review facts pertinent to Mr. Russo's Social Security Award for disability. Specifically, paragraph 17 states: "On October 2, 1981 he injured his back and *has never been able to return to gainful employment....*" (emphasis added). Mr. Russo admitted paragraphs 11–17 in his Local Rule 12(n) response.