**Ronald R. KUEHL, Plaintiff,**

v.

**CHRYSLER PENSION PLAN
and Chrysler Corporation,
Defendants.**

No. 93–C–444.

United States District Court,
E.D. Wisconsin.

May 18, 1995.

Scott B. Fleming & John E. Donahue, Weiss, Berzowski, Brady & Donahue, Milwaukee, WI, for plaintiff.

Peter J. Stone & Walter E. Zimmerman, Foley & Lardner, Milwaukee, WI, for defendants.

GOODSTEIN, United States Magistrate Judge.

On May 3, 1993, Ronald Kuehl brought this action in the United States District Court for the Eastern District of Wisconsin against Chrysler Pension Plan (hereinafter "Chrysler Plan") and Chrysler Corporation (hereinafter "Chrysler"), alleging that he has been denied pension benefits due him under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* and under a theory of promissory estoppel. This case was randomly assigned to this court. The parties have consented to the full jurisdiction of this court pursuant to 28 U.S.C. § 636(c). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper in the Eastern District of Wisconsin. Currently pending before the court are the plaintiff's and the defendants' motions for summary judgment.

## I.  Background

The facts which appear below are uncontested for purposes of the plaintiff's motion for summary judgment or, in the alternative, for partial summary judgment, and the defendant's motion for summary judgment, *see* Local Rule 6.05(b)(1) and (2) (E.D.Wis.):

1. Plaintiff, Ronald R. Kuehl, resides in the County of Dodge, State of Wisconsin.

2. Defendant, Chrysler Pension Plan, is an "Employee Pension Benefit Plan" as that term is used in ERISA and is sponsored by Chrysler.

3. Defendant, Chrysler Corporation is a Delaware Corporation and is the Plan Administrator for the Chrysler Plan. Chrysler is located in Highland Park, Michigan.

4. In 1956, Kuehl began work for the Hartford Division of the West Bend Company following his graduation from college. The Hartford Division manufactured outboard motors and industrial engines. Kuehl worked for the Hartford Division from February, 1956, until January, 1965.

5. While employed by the West Bend Company, Kuehl earned pension benefits under a non-contributory pension plan known as the West Bend Company Salaried Employees' Pension Plan.

6. In January, 1965, the West Bend Company sold the assets of its Hartford Division to the Chrysler Outboard Corporation (hereinafter "Chrysler Outboard"), a subsidiary of Chrysler, which took over the business in Hartford and continued to manufacture outboard motors. Chrysler Outboard sold the product it manufactured to Chrysler. Following the sale, Kuehl began to work for Chrysler Outboard where he continued to work until 1976.

7. In connection with its acquisition of the Hartford Division, Chrysler Outboard adopted that portion of the West Bend Company Salaried Employees' Pension Plan which was intended to provide pension benefits to the salaried employees of the Hartford Division. The name of the plan was later changed to the Chrysler Outboard Corporation Salaried Employees' Pension Plan. In 1991, the name of the Chrysler Outboard Salaried Employees' Pension Plan (by then known as the Chrysler Marine Salaried Employees' Pension Plan) was changed to the Chrysler Component Plants' Salaried Employees' Pension Plan (hereinafter "Component Plants' Plan").

8. In December, 1976, Kuehl became an employee of Chrysler, essentially performing the same job he had been doing while an employee of Chrysler Outboard. Kuehl worked for Chrysler in Hartford from approximately December, 1976, until January, 1984, during which time he earned pension benefits under the Chrysler Pension Plan.

9. In January, 1984, Chrysler Outboard, now known as Chrysler Marine Corporation after changing its name in April of 1983, was sold to Bayliner's U.S. Marine Corporation (hereinafter "U.S. Marine"). U.S. Marine continued the prior business of Chrysler Outboard in Hartford, Wisconsin, and Kuehl became an employee of U.S. Marine, continuing to work in Hartford.

10. Sometime in the late 1980's, Brunswick Corporation acquired U.S. Marine. Kuehl continued, until February, 1991, to work in Hartford for Force Outboards, a subsidiary of Brunswick, with no change in his duties and responsibilities.

11. In February, 1991, Kuehl moved his place of employment to Fond du Lac, Wisconsin, and his employer changed from Force Outboards to Mercury Marine, a division of Brunswick Corporation. Kuehl continued to work in Fond du Lac until the end of August, 1991.

12. In the middle of 1991, Mercury Marine announced that it was going to downsize its work force. Kuehl was 57 years old at the time. When he left Mercury Marine in August, 1991, Kuehl was offered the option of selecting either a discretionary enhanced severance program or a discretionary enhanced pension benefit program. This option enhanced Kuehl's retirement benefits from Mercury Marine by adding three years of additional age and three years of additional participating service, which had the effect of increasing the benefit he received from $15.36 to $126.17 per month.

13. When Kuehl left Mercury Marine in August, 1991, he sought other work and he applied for unemployment benefits which he received until June or July of 1992. In 1992, he was self-employed as a financial services registered representative and insurance agent.

14. Chrysler is the administrator of both the Chrysler Pension Plan and the Component Plants' Plan. The Board of Directors of Chrysler has nominated an Employee Benefits Committee (hereinafter the "Committee") vested with responsibility for overall administration and implementation of the Chrysler Plan and the Component Plants' Plan. That Employee Benefits Committee has, in turn, delegated responsibilities to various employees of Chrysler whose duties are handling of retirement benefits for retirees under the Chrysler Plan and the Component Plants' Plan. Chrysler maintains pension records for all current and former employees entitled to benefits under these Plans.

15. Sometime about 1985, Kuehl was offered the opportunity by Chrysler to either accept a lump sum separation payment or to continue on indefinite layoff status, and he elected to continue on indefinite layoff. Chrysler advised Kuehl that at the time he attained 85 points, i.e. the combination of his years of service plus his age, he would be eligible for retirement benefits based upon the pension rates in effect at that time. Kuehl, who was then 49 years old, chose the option of indefinite layoff status which allowed him to elect retirement benefits in the future based on pension rates in effect at the time his benefits commence.

16. On December 22, 1989, Kuehl wrote Chrysler regarding his retirement status. Elizabeth (Bette) Faria assisted Kuehl in preparing an Application for Additional Pension Credited Service (hereinafter the "Application"). The Application contained information regarding the dates and places Kuehl worked including the Hartford Division of the West Bend Company, Chrysler Outboard and Chrysler Corporation. On the back of the Application, Chrysler indicated that: "As a result of this application, your credited service records have been changed to reflect 250 months of additional credited service." (Kuehl Aff., Exhibit 4).

17. On January 31, 1990, Tom Fiema wrote Kuehl a letter which stated the following:

"Your request for additional Pension Credited Service has been approved. Your records have been adjusted to reflect an additional 250 months of Credited Service for a total of 348 months through December, 1988."

(Kuehl Aff., Exhibit 4).

18. On December 13, 1990, at Kuehl's request, Tom Fiema of Chrysler provided him with an estimate of monthly pension benefits. (Kuehl Aff., Exhibit 6). That communication estimated benefits based on 348 months of credited service under the Chrysler Plan. *Id.* Kuehl also received two other pension benefit calculations from Chrysler, both of which were based on Kuehl receiving 348 months of credited service for the purpose of determining benefits under the Chrysler Plan. *Id.* at Exhibits 7, 8.

19. On February 19, 1992, Kuehl wrote to Tom Fiema at Chrysler advising him that he was considering retirement and stated that "My decision will be based on the options available to me as concerns my eligibility for retirement under Chrysler's program." (Kuehl Aff., Exhibit 10). At the time Kuehl

wrote this letter, he had not made a final decision concerning his retirement and was still collecting unemployment compensation and looking for work.

20. In response to Kuehl's request, Chrysler sent him a memorandum dated April 8, 1992, which provided a hand-drafted estimate of his pension benefits. (Kuehl Aff., Exhibit 11). These calculations indicated that Kuehl was accruing benefits under the Component Plants' Plan as well as the Chrysler Plan, and that his total benefit based on assumptions then in effect would be $346.04. Kuehl responded by letter dated May 5, 1992, stating the following:

> My records show that I have 348 months of credited service with Chrysler as evidenced by a letter from Thomas L. Fiema, Sr., dated January 31, 1990. My decision to take voluntary severance from Mercury Marine was predicated on accrued pension benefits with Chrysler available to me whenever needed. I am now in that position of need.

(Kuehl Aff., Exhibit 12).

21. Kevin Carroll of Chrysler responded to Kuehl in a May 21, 1992, letter which stated that the Chrysler Marine Pension Plan and the Chrysler Corporation Pension Plans recognize the total credited service for purposes of determining retirement eligibility but that each plan pays benefits only on the service earned under that plan. (Kuehl Aff., Exhibit 13).

22. In September, 1992, Kuehl officially requested retirement from Chrysler, and his application was completed in January, 1993. Kuehl then retired retroactive to October 1, 1992, the first month after he had officially made his request, and he began receiving benefits retroactive to October 1, 1992. Kuehl receives a monthly retirement payment of $127.96 constituting the benefit for 250 months of credited service under the Component Plants' Plan plus an additional $191.46 for the benefit for 98 months of credited service under the Chrysler Plan, totaling $319.42 per month, plus $95.28 as the benefit under a contributory Salaried Employees' Retirement Plan ("SERP").

23. By way of comparison, the benefits to be received by a hypothetical employee of Kuehl's age who did retire on September 30, 1992 with 348 months of credited service under the Chrysler Plan would total $679.87 per month, plus $95.28 as the benefit due him under a contributory SERP.

## II. Analysis

Kuehl moves for summary judgment on the grounds that he has accrued benefits, and that Chrysler Plan and Chrysler's (hereinafter "defendants") substitution of a lower benefit is in violation of ERISA. Kuehl also claims he is entitled to attorney's fees for this action under ERISA. The defendants move for summary judgment as to Kuehl's ERISA claims on the grounds that Kuehl is being paid the full pension benefits to which he is entitled. The defendants additionally argue that Kuehl's promissory estoppel claim is not supported in law and should likewise be dismissed.

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. As provided under Rule 56(c), only "genuine" issues of "material" fact will defeat an otherwise "proper" motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[M]aterial" facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the nonmoving party. Anderson, 477 U.S. at 248.

The movant bears the burden of establishing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Rule 56(c) Fed.R.Civ.P.; see Adickes v. S.H. Kress & Co., 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); see also Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S.Ct. at 2552 (the moving party has the responsibility of informing the court of portions of the record or affidavits

that demonstrate the absence of a triable issue). In addition, the moving party may meet its burden of showing an absence of a material issue by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2514. *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988); *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 886 (7th Cir.1989). If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

This case appears to present a unique and unfortunate situation in that Kuehl is receiving the retirement benefits as provided for in the Component Plants' Plan and the Chrysler Plan, but also one in which the defendants made a factual misrepresentation upon which Kuehl claims to have relied in planning for his retirement. The court's analysis will first address whether or not Kuehl has any legal recourse under the Chrysler Plan.

## A. Benefits Due Kuehl Under the Chrysler Plan

■ Under ERISA 29 U.S.C. § 1132(a)(1)(B), a benefit plan participant may sue "to recover benefits due to him under the terms of his plan." Where the plan provides the trustees with the discretion to interpret the plan, the court can only overturn their interpretation by finding that they abused their discretion or, in other words, by finding that they were not just incorrect but "downright unreasonable." *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990). The parties do not dispute that, in this case, the Employee Benefits Committee had discretion to interpret the plan and that the action of the Employee Benefits Committee is binding. The parties do disagree as to what action constitutes an interpretation of the Employee Benefits Committee.

Kuehl argues that he is entitled to a total of 348 months of credited service under the Chrysler Plan. Kuehl asserts that he made application under the Chrysler Plan for determination of his pension credited service, and that the defendants and Kuehl are therefore bound by that determination as a matter of law. Kuehl claims that any reduction of that benefit constitutes a forfeiture of retirement benefits in violation of ERISA. He further argues that Chrysler's failure to provide him with either a summary plan description, any summary annual reports, or any other document concerning the Component Plants' Plan prior to May, 1992, precludes the defendants from substituting lower benefits under that plan. The defendants claim that the Committee has properly administered and interpreted the Chrysler Plan and the Component Plants' Plan and is paying Kuehl his full pension benefits pursuant to each. The defendants further submit that the Committee did not abuse its discretion so as to be overruled.

### 1. Retirement Benefits

■ Initially, the court will address Kuehl's challenge to the final determination by the Committee that Kuehl should receive 250 months of credited service under the Component Plants' Plan and 98 months of credited service under the Chrysler Plan. Applying the "downright unreasonable" standard, the court will review the Committee's determination. *See Fuller*, 905 F.2d at 1058. Section 2.1 of the Chrysler Plan states that only Chrysler employees or employees are eligible to accrue benefits under the Chrysler Plan. (Carroll Aff., Exhibit C, p. 5). Employees are defined by § 7.5 to include persons employed by Chrysler or a designated "covered subsidiary" of Chrysler are eligible to accrue benefits under the Chrysler Plan. *Id.* at 84. Kuehl does not contest that he worked for the Chrysler Marine/Chrysler Outboard subsidiary, and its predecessor, for 250 months and was on the Chrysler payroll for 98 months. Chrysler Outboard is not designated as a "covered subsidiary" in the Chrysler Plan, (*See* § 2.8 C–AC which lists the subsidiaries/employees so designated as "covered"), and § 3.8 of the Chrysler Plan makes clear that "nothing herein shall consti-

tute such other employees as employees covered by this plan." (Carroll Aff., Exhibit C, p. 75).

Kuehl is not claiming that Chrysler Outboard is a "covered subsidiary" so as to allow him to accrue pension benefits under the Chrysler Plan for the time he was employed by Chrysler Outboard but, rather, he relies on § 3.9 of the Chrysler Plan to support his receipt of 348 credited service months under the Chrysler Plan. Section 3.9 provides, in relevant part:

> An employee who is covered by the Plan at the time of his retirement, but who at some time during the entire period of his employment was not covered by this Plan, shall count his service before and after the effective date with the Corporation or a predecessor company or with a Covered Subsidiary or *(with the approval of the Employee Benefits Committee)* with i) any other subsidiary, or ii) any firm or corporation substantially all of the property and assets of which have been acquired by a Covered Subsidiary or by such other subsidiary or by the Corporation, for the purpose of computing credited service, as though he had been an employee within the meaning of this Plan ... A person must be an employee covered by this Plan at the time of his retirement in order to retire under this Plan.

(Carroll Aff., Exhibit C, p. 75) (emphasis added).

However, there is no evidence that Kuehl's Application was ever approved by the Employee Benefits Committee as required by § 3.9. Kevin Carroll, a staff specialist in the Employee Benefits Department of Chrysler, testified by affidavit that Kuehl's Application was never presented to the Employee Benefits Committee (Carroll Supp.Aff., ¶¶ 6, 8). Elizabeth Faria stated in her affidavit that the determination to credit Kuehl with 250 months of credited service under the Chrysler Plan was made by the Corporate Pension Plan Administrators (Fleming Aff., Faria Dep., p. 19). The document itself reflects only that "credited service records" were changed as a result of the Application and the Application was only routed to the Pension Unit, Personnel Office and Plant Pension Representative. (Kuehl Aff., Exhibit 4).

In his reply brief, Kuehl claims that the Benefits Committee acted by its designees and is therefore bound by the determinations of those designees. Section 4.2 vests the Employee Benefits Committee with responsibility for overall administration and implementation of its pension plans, including the power and duty to construe the plan and determine all questions of interpretation that may arise under it. (Carroll Aff., Exhibit C, p. 76). Section 4.2(B) further provides that the Employee Benefits Committee may act by a majority of its three members. *Id.* at p. 77–78. The Chrysler Plan only allows the Committee to appoint a Secretary or Assistant Secretary who may assist with the administrative functions set forth in 4.2(F). *Id.* at p. 78–79.

The only persons who had acted with respect to Kuehl's credited service before 1992 were Tom Fiema, who was a Retirements Benefits Administrator, Elizabeth (Bette) Faria, who was an Employee Benefits Supervisor, and the Corporate Pension Plan Administrators, none of whom appear to have had any authority to act for the Committee. Even if § 4.2(F) were to grant designees of the Employee Benefits Committee the power to determine credited service under the Chrysler Plan, it does not grant authority to approve exceptions to the covered subsidiaries under the Chrysler Plan pursuant to § 3.9. Kuehl is not entitled to the additional 250 months of credited service under § 3.9 and therefore the determination of the Employee Benefits Committee to award Kuehl only 98 months of credited service under the Chrysler Plan was reasonable.

2. The Application for Additional Pension Credited Service

■ Kuehl argues that the approval of the Application, granting him 348 months of credited service under the Chrysler Plan constitute an interpretation of the plan which binds the Employee Benefits Committee and therefore cannot be set aside by the court unless it is arbitrary or capricious. The parties dispute whether the credited service referred to in the Application was "total credit-

ed service" including the Chrysler Plan and the Component Plants' Plan, and therefore used only to determine eligibility and not benefits under a particular plan, or "credited service" only under the Chrysler Plan. At her deposition, Elizabeth Faria, who assisted Kuehl in preparing the Application, testified that Kuehl's records were adjusted to reflect 250 months of credited service under the Chrysler Plan only. (Fleming Aff., Faria Dep., p. 23). At his deposition, Thomas Fiema stated that he believed that the Application gave Kuehl credited service under the Chrysler Plan and that he based the Estimates of Monthly Retirement Benefits which he provided Kuehl (Kuehl Aff., Exhibits 6–8) on this belief. (Fleming Aff., Fiema Dep., p. 18). Thus, it appears that the 348 months of total credited service awarded Kuehl as a result of his Application referred to credited service under the Chrysler Plan.

Kuehl contends that his Application was a written statement sent to the Employee Benefits Committee for review and that the adjustment of his records to reflect 250 months of additional credited service under the Chrysler Plan was a determination which is binding under § 3.6 of the Chrysler Plan. Section 3.6 requires that an employee submit a written statement that he shall sign in duplicate of all facts and circumstances concerning the matter and that a designee of the Corporation shall write a complete statement of the case and send it in duplicate to the Employee Benefits Committee. (Carroll Aff., Exhibit C, p. 74). The Application does not constitute the formal written statements envisioned by this section, nor was the Application signed by Kuehl or submitted in duplicate. In addition, as discussed above, there is no evidence that the Application was ever shown to the Committee so as to constitute its determination. Thus, even assuming that the Application indicated that Kuehl's records were changed to reflect 348 months of service under the Chrysler Plan, this was not the written finding of the Committee pursuant to § 3.6 of the Chrysler Plan.

■ Even if the adjustment of Kuehl's records constituted the action of the Employee Benefits Committee through its designees, as Kuehl claims, Kuehl is not entitled to 348 months of credited service under the Chrysler Plan. As discussed above, the Chrysler Plan does not award benefits for Kuehl's work for Chrysler Outboard which is not a "covered subsidiary" and Kuehl does not fall within the exception provided for in § 3.9 of the Chrysler Plan. The defendants retain the authority to correct a mistaken interpretation under the Chrysler Plan and to award benefits in accordance with the provisions of the Chrysler Plan. *See Nass v. Staff Retirement Plan of Local 810*, 515 F.Supp. 950, 960 (S.D.N.Y.), *aff'd*, 671 F.2d 492 (2nd Cir.1981) ("[T]he Committee's past errors in computing benefits should not limit its power to interpret the Plan and award benefits in accordance with its provisions."); *Reynolds v. Bethlehem Steel Corp.*, 619 F.Supp. 919, 924–25 (D.Md.1984) (failure to correct an error would have been a breach of the General Pension Board's fiduciary duty under ERISA to administer the Plan in accordance with the provisions set forth in the Plan Document; correction of the error was not *per se* arbitrary and capricious).

■ In examining the Chrysler Plan itself, the defendants do not have the authority to grant Kuehl 348 months of credited service. Section 4.2, which defines the powers and duties of the Employee Benefits Committee, includes within the realm of duties applying "the procedure set forth in this Plan for establishing and verifying credited service of employees and former employees" and, after affording employees, former employees and the Corporation an opportunity to object, determining the credited service of employees and former employees. Section 4.2(A)(3). (Carroll Aff., Exhibit C, p. 77). Section 4.2(E) further provides that:

Any action that this Plan authorizes or requires the Employee Benefits Committee to do shall be final and binding upon any employee, former employee or retired employee. The Employee Benefits Committee may construe that this Plan and its construction thereof and action thereon in good faith shall be final and conclusive, and the determination in good faith by the Employee Benefits Committee of any matter or question under this Plan shall be final and conclusive and shall be binding on

all parties to this Plan and upon employees, former employees and retired employees.

(Carroll Aff., Exhibit C, p. 78). The Chrysler Plan clearly does not authorize Kuehl to receive 348 hours of credited service and therefore any mistaken determination to the contrary is not binding. Moreover, Kuehl cannot maintain a cause of action under ERISA, 29 U.S.C. § 1132(a)(1)(B), to recover benefits due him under the terms of his plan because he is not entitled to benefits in addition to those he is already receiving. Kuehl is only entitled to 98 months of credited service under the Chrysler Plan. Therefore, the defendants' motion for summary judgment regarding Kuehl's first and second causes of action to recover benefits under 29 U.S.C. § 1132 will be granted and these claims will be dismissed.

### 3. Fiduciary Duty

■ Kuehl suggests that Chrysler has a fiduciary duty to act on its mistake because Kuehl relied upon the credited service determination in taking early retirement and planning his financial future. The court notes that Kuehl was informed by Carroll by letter dated May 21, 1992, that his pension credited service included 250 months under the Chrysler Marine Pension Plan and 98 months under the Chrysler Corporation Plan, contrary to information he may have previously received, and that the pension service credits accrued under the Chrysler Marine Plan are not transferrable to the Chrysler Plan. (Kuehl Aff., Exhibit 13). To establish liability for breach of a fiduciary duty, the plaintiff must prove willful or bad faith conduct. *Burke v. Latrobe Steel Co.*, 775 F.2d 88, 91 (3rd Cir.1985). "[T]rustees do not breach their fiduciary duties by interpreting the plan in good faith, even if their interpretation is later determined to be incorrect." *Challenger v. Local Union No. 1*, 619 F.2d 645, 648 (7th Cir.1980). Kuehl has presented no evidence of bad faith on the part of Chrysler or Chrysler Pension Plan and therefore he cannot assert a prima facie case for breach of fiduciary duty.

### B. Forfeiture

■ In his third cause of action, Kuehl claims that the subsequent action taken by Chrysler to reduce his credited service from 348 months to 98 months is a forfeiture of his accrued benefit in violation of 29 U.S.C. § 1053(a). This section deals with the accrual and vesting of benefits and provides that accrued benefits are nonforfeitable. "Nonforfeitable" is defined by 29 U.S.C. § 1002(19) as follows:

[W]hen used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan.

Kuehl asserts that, based upon the communications of Chrysler in 1985 and in January, 1990, he had accrued a benefit which is now being forfeited. As discussed above, the evidence shows that Kuehl never obtained a formal determination of his benefits by the Employee Benefits Committee prior to his formal application for retirement. Even if the Application constituted a determination of Kuehl's credited service hours by a designee of the Committee, Kuehl never accrued such hours under the written terms of the Chrysler Plan and thus never obtained a "legally enforceable" benefit greater than the benefit that he is now receiving. *See Rosile v. Aetna Life Insurance Co.*, 777 F.Supp. 862, 870–71 n. 10 (D.Kan.1991), *aff'd*, 972 F.2d 357 (10th Cir.1992) (finding that employee has no "vested" right to benefits under ERISA as a result of a mistaken benefits determination). Moreover, had the defendants erroneously paid Kuehl, they could conceivably recover that money under the doctrine of restitution. *See Naugle v. O'Connell*, 833 F.2d 1391, 1397–98 (10th Cir.1987) (finding that restitution was an appropriate remedy for trustee's erroneous payments based on a mistake of fact).

Kuehl also argues that Chrysler's failure to provide him with either a Summary Plan Description (SPD) or Summary Annual Reports (SAR) regarding the Component Plants' Plan since at least 1976 is the equiva-

lent of a forfeiture of his accrued benefits and therefore Chrysler should be precluded from substituting lower benefits under that plan. ERISA does require a Plan Administrator to provide all participants with a SPD describing all material provisions of the plan and a SAR summarizing key information in the Plan's annual report. 29 U.S.C. § 1022(a)(1); 29 C.F.R. § 2520.104b–10. Kuehl also cites to *Hillis v. Waukesha Title Co., Inc.,* 576 F.Supp. 1103, 1109 (E.D.Wis. 1983) as support, wherein the court precluded an employer from implementing a forfeiture clause that it had failed to provide to the employee. Even if Kuehl was not provided with copies of the SPD and SAR as he alleges, unlike the situation in *Hillis,* Kuehl accrued no benefits under the plan which are now being forfeited. The court finds no forfeiture of Kuehl's retirement benefits under ERISA and therefore the defendants' motion for summary judgment on Kuehl's third claim for relief will be granted and this claim will be dismissed.

## C. Promissory Estoppel

The defendants move for summary judgment on Kuehl's fourth cause of action for promissory estoppel whereby Kuehl asserts that federal common law principles of estoppel apply to require Chrysler to provide the benefit of 348 months of service under the Chrysler Plan. The court initially notes that to the extent that Kuehl claims estoppel under Wisconsin law, that claim is preempted by ERISA as it relates to an ERISA pension plan. *See Russo v. Health, Welfare & Pension Fund,* 984 F.2d 762, 767 (7th Cir.1993).

Under federal common law, "[a]n estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." *Black v. TIC Investment Corp.,* 900 F.2d 112, 115 (7th Cir.1990). Estoppel decisions under ERISA can be categorized based on whether the underlying plan provision is ambiguous, the medium by which the representation is communicated, and the type of the plan. *See* Stephen R. Bruce, *Pension Claims: Rights and Obligations* 411 (2nd ed. 1993). The courts of every circuit have recognized that oral or written statements that offer interpretations of ambiguous plan provisions may form the basis for estoppel. *Id.*

Many circuits have held that representations which contradict unambiguous requirements may form the basis of estoppel. *See Bruch v. Firestone Tire & Rubber Co.,* 828 F.2d 134, 149 (3d Cir.1987), *aff'd in part, rev'd in part,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (stating that estoppel is available but not applicable because no misrepresentation was made); *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1096 (9th Cir.1985) (finding that doctrine of estoppel is available but reliance is not reasonable when participant had, in bad faith, tried to have plan accept incorrect date of birth so he could retire early); *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1355 (8th Cir.1980) (holding that promissory estoppel states a claim under ERISA's federal common law); *Haeberle v. Board of Trustees,* 624 F.2d 1132, 1139 (2nd Cir.1980) (recognizing estoppel but requiring strict proof of its elements).

The Sixth and Seventh circuits have acknowledged the application of the doctrine of estoppel when the actuarial soundness of the plan is not in issue. *See Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1300 (6th Cir. 1991); *Black,* 900 F.2d 112, 115 (7th Cir. 1990). In *Black,* 900 F.2d at 115, the Seventh Circuit held that estoppel principles apply to claims for benefits under unfunded single-employer welfare benefit plans. However, the court did not express an opinion as to the application of estoppel principles in other situations. Like the Sixth Circuit, *Armistead,* 944 F.2d at 1300, the Seventh Circuit expressed concern for the Plan's actuarial soundness, distinguishing the unfunded welfare plan, where there is no particular fund which is depleted by paying benefits, from a pension fund which has strict vesting and accrual requirements. *Black,* 900 F.2d at 115.

Although the provisions of the Chrysler Plan could not be characterized as ambiguous, Kuehl's accrual of benefits under the different plans was, at the very least, confusing. Kuehl thus turned to the defen-

dants for answers on more than one occasion and, in planning his future, arguably relied upon the written statements of the Retirement Benefits Administrator, the Supervisor of Employee Benefits and a notice on the Application from "Chrysler Corporation." In the view of the Seventh Circuit, promissory estoppel is a part of the common law which has been created to plug the gaps in ERISA. *Miller v. Taylor Insulation Co.*, 39 F.3d. 755, 758 (7th Cir.1994). Where better to apply estoppel than in the present situation, where ERISA prevents recovery to an employee who certainly appears to have been misled? Although the Chrysler Plan is a pension plan and has strict vesting and accrual requirements, the Chrysler Plan involves only one employer and therefore there appears to be no danger that other employers will be hurt if Chrysler is held to its representations. *See Black*, 900 F.2d at 115. Moreover, the court does not believe that permitting a claim for promissory estoppel under the particular facts of this case will open the floodgates to allow employees to assert estoppel and attempt to circumvent their pension benefits and thereby undermine the ability of the Fund to pay its promised levels of benefits. Viewing the record and all inferences drawn from it in the light most favorable to Kuehl, the doctrine of estoppel applies under the attendant circumstances.

Notwithstanding, the court cannot grant summary judgment as a matter of law. Factual issues remain as to whether Kuehl relied to his detriment on the representations made to him and whether his reliance was reasonable. Since Kuehl knew the proper calculation of credited service time as of at least May of 1992, which was prior to his decision to retire in September of that year, Kuehl is hard pressed to claim that he based his decision to retire on the misrepresentation. Nevertheless, Kuehl claims that he relied on the representations in two respects. First, he states that he relied on the Estimate of Monthly Retirement Benefits provided by Bette Faria in 1985 in determining whether to take early retirement or continued layoff status with Chrysler in June, 1985. Secondly, Kuehl asserts that he relied upon the representations of Chrysler in the summer of 1991 when he was given the option from

Mercury Marine to take an enhanced retirement package, an enhanced layoff package or continue of his employment.

The defendants argue the documents labeled "Estimate of Monthly Retirement Benefits" were only estimates, as stated at the bottom of each page, and therefore reliance on those documents was unreasonable. The defendants further argue that Kuehl made his decision to accept a layoff from Mercury Marine based upon factors other than the pension benefits he believed he had earned under the Chrysler Plan and therefore Kuehl has not demonstrated reliance. Kuehl admits in his deposition that he based his decision on many factors, including the enhanced retirement benefits he was offered, the long commute to work, dissatisfaction with the nature of his job, problems with various personnel, the fact that Mercury Marine was downsizing, and Kuehl's desire to retire around age 55. (Stone Aff., Kuehl Dep., pp. 35–38, 44–46). The defendants have also provided the court with a document from Mercury marine titled "Outboard Credit Reduction in Force," dated August 30, 1991, which indicates that Kuehl's position as credit administrator was being eliminated. (Stone Aff., Exhibit B28).

On the other hand, Kuehl states in his affidavit that had he been informed in June of 1985 that 250 months of his credited service applied to benefits under the Component Plants' Plan, he would have instead selected permanent separation from Chrysler. (Kuehl Supp. Aff., ¶ 5). Kuehl further contends that the most significant factor in his decision to accept enhanced retirement benefits at Mercury Marine was his benefits under the Chrysler Plan and that had he known that his benefits were $300 per month less, he probably would have continued to work at Mercury Marine. *Id.* at ¶¶ 7, 8. Additionally, at his deposition, Kuehl stated that he did not retire at age 55 because he could not afford to do so. (Stone Aff., Kuehl Dep., p. 48). As to the significance of the document titled "Outboard Credit Reduction in Force," it is unclear whether this was a notification by Mercury Marine that Kuehl would lose his job or whether it was created after Kuehl had accepted the "voluntary separation op-

portunity" purportedly offered to Kuehl by a letter dated July 3, 1991. (Stone Aff., Exhibit B29).

Based upon the deposition testimony, affidavits and exhibits now before the court, the court cannot determine whether Kuehl relied upon the misrepresentations by deciding in 1985 to take indefinite layoff status with Chrysler and whether reliance on the "Estimates of Monthly Retirement Benefits" was reasonable. Likewise, there is a genuine issue of material fact as to whether Kuehl relied upon the misrepresentations of the defendants in taking the enhanced retirement benefit from Mercury Marine. The court therefore denies the defendants' motion for summary judgment on Kuehl's claim for promissory estoppel. Should Kuehl prevail at trial on this issue, the court will then determine if he is entitled to attorneys fees.

**IT IS THEREFORE ORDERED** that:

1. The plaintiff's motion for summary judgment is **denied.**

2. The defendants' motion for summary judgment is **denied** in part and **granted** in part. The motion is denied with respect to Kuehl's claim for promissory estoppel. The motion is granted with respect to the plaintiff's first, second, and third causes of action which are hereby dismissed.