In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3884

KENNETH PEARSON,

*Plaintiff-Appellant*,

*v.*

VOITH PAPER ROLLS, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 08 C 114—**William C. Griesbach,** *Judge*.

ARGUED SEPTEMBER 27, 2010—DECIDED AUGUST 25, 2011

Before ROVNER, EVANS* and WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge*. When Kenneth Pearson was terminated from his position at Voith Paper Rolls, Inc. ("Voith Paper"), he negotiated a severance package based, in part, on his belief that he would be receiving

* Circuit Judge Evans died on August 10, 2011, and did not participate in the decision of this case, which is being resolved by a quorum of the panel under 28 U.S.C. § 46(d).

a pension in a certain amount from the Voith Paper Rolls, Inc. Salaried Pension Plan ("the Plan"). Unfortunately, the administrator for the Plan (who was also the Human Resources manager for Voith Paper) miscalculated some of Pearson's projected pension numbers. After signing off on the severance agreement, Pearson learned of the error and brought an estoppel claim against the Plan. We have not yet recognized estoppel claims in this context, and we need not decide here whether such claims exist as a matter of law. Because Pearson's claim fails for lack of evidence of intentional misrepresentation or detrimental reliance, we affirm the district court's grant of summary judgment in favor of the Plan.

## I.

Pearson worked for Voith Paper for approximately fourteen years before the company decided to terminate his employment. The specific facts of the termination are largely unimportant to the claim at issue in this appeal, with one exception: at the time of his termination, Pearson had a colorable claim against Voith Paper for age discrimination. As a result, Voith Paper negotiated a severance package with Pearson, offering him certain benefits in exchange for a release from claims related to the termination. Joseph Booth was both the manager of Voith Paper's Human Resources Department and also the administrator of the Plan. As Booth prepared to conduct severance negotiations with Pearson in his capacity as Human Resources manager, he decided to

provide Pearson with information about his pension benefits under the terms of the Plan. In advance of a termination meeting with Pearson, Booth asked Tyler Wiggs, a Human Resources generalist at Voith Paper, to calculate Pearson's retirement benefits under the Plan. Wiggs prepared the benefits calculation and Booth then reviewed and approved it. Wiggs then used the numbers to create a pension benefit election form that Booth provided to Pearson at the termination meeting on September 20, 2006.

The election form presented five options for the payout of retirement benefits. In general, a Plan beneficiary may choose between a lump sum payment or one of four different variations of payments over time.[1] In the normal course of business, all five options are calculated to be actuarially equivalent. In this case, though, Wiggs correctly calculated the lump sum payment but substantially overstated the benefits provided in the four options for payment over time. Pearson was not old enough at termination to receive full pension benefits, but he was eligible for reduced early retirement benefits. Wiggs erred by entering his early retirement data in the part of the spreadsheet related to the lump sum payout and failing to enter that same information into the area of the spreadsheet used to calculate the four options for payouts over time. As a result, the

---

[1] The four options for payments over time included Five Year Certain, 50% Joint & Survivor, 100% Joint & Survivor, and Straight Life.

spreadsheet correctly calculated the reduced lump sum benefit Pearson would receive on early retirement, but calculated the other four options as if Pearson was eligible for full retirement.

At the beginning of severance negotiations, Booth provided Pearson with the erroneous calculations. Pearson, who wished to select the "50% Joint & Survivor" option, negotiated his severance benefits believing that he would receive $1156.89 per month for the remainder of his life, and that his wife would then receive half that amount per month for the remainder of her life. He signed a severance agreement with Voith Paper on November 14, 2006, and submitted his completed pension benefits election form on December 29, 2006. On receipt of Pearson's election form in early January 2007, Wiggs, per her regular practice, double-checked her original calculations. During this review, Wiggs realized that she had failed to enter the early retirement information into the part of the spreadsheet used to calculate payments over time. She immediately recalculated Pearson's benefits using the correct early retirement information and prepared a new election form with the corrected numbers. The lump sum payout was nearly identical; it changed only slightly from the original calculation to account for the passage of the few months between the calculations. The amounts for the payouts over time, however, were all substantially reduced. For the 50% Joint & Survivor option that Pearson originally selected, the monthly payout dropped from $1156.89 per month to $706.74 per month, a reduction of $450.15 per month. The original

election form had overstated by nearly 64% the actual benefits for the option Pearson had selected.

Pearson never returned the recalculated election form to the Plan and consequently has not yet received any of his pension benefits. Instead, he filed suit against the Plan, alleging in the first count a claim for pension benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and asserting in the second count a claim for promissory estoppel. Pearson subsequently voluntarily dismissed the claim for ERISA benefits and all that remains is the estoppel claim. In that claim, Pearson alleges that Booth, the Plan administrator, had simultaneously provided him with a written promise of pension benefits and a proposed severance agreement. Pearson asserts that he relied on the written promise of pension benefits when he was negotiating the terms of his severance agreement. In particular, he contends that he relied on the amounts stated on the original election form when he made certain concessions in the severance agreement regarding Voith Paper's payment of his health insurance premiums. His complaint asks the court to estop the Plan from paying him anything other than the amount stated in the original election form because he had relied upon those terms to his detriment when negotiating his severance agreement.

In considering the Plan's motion for summary judgment, the district court noted that this court has not yet recognized a claim for estoppel against a single-employer, funded pension plan such as the Plan here. To the

extent courts had allowed any claims for estoppel against ERISA plans, the district court noted that statements or conduct by individuals implementing the plan may estop enforcement of the plan's written terms only in extreme circumstances. Additionally, to prevail, a plaintiff must demonstrate a knowing misrepresentation, made in writing, and reasonable reliance on that misrepresentation by the plaintiff, to the plaintiff's detriment. In this instance the district court found that Pearson had not shown a knowing misrepresentation, detrimental reliance or extraordinary circumstances. At most, the court found, Pearson had demonstrated negligence by Wiggs and Booth in presenting the incorrect amounts in the original election form. The court also concluded that Pearson failed to show any economic harm as a result of the error because his claim that he would have negotiated better severance terms for himself was entirely speculative. Finally, the court concluded that if anyone misrepresented the amounts, it was the employer rather than the Plan. The Plan, after all, had nothing to gain from misrepresenting the benefits to which Pearson was entitled. The court therefore granted judgment in favor of the Plan. Pearson appeals.

## II.

On appeal, Pearson asks us first to recognize a claim for estoppel against a funded, single-employer pension plan. He then contends that he presented sufficient evidence on the issues of knowing misrepresentation and

detrimental reliance to survive summary judgment on such a claim. The Plan would also like us to resolve whether an estoppel claim is viable against a defined-benefit, funded pension plan. Of course, the Plan would prefer that we hold that such a claim is not a valid cause of action because recognizing estoppel claims would undermine the actuarial soundness of such plans. There is no need for us to decide in this case whether an estoppel claim may be raised against a funded, single-employer pension plan; Pearson has failed to raise a genuine issue of material fact regarding at least two elements of the proposed claim. We decline to resolve the question of the viability of the claim until we are presented with a case where the answer is necessary to the outcome of the case, and we offer no opinion at this time on whether such a claim is legally cognizable.[2] We will assume only for the pur-

---

[2] We held in *Black v. TIC Inv. Corp.*, 900 F.2d 112, 115 (7th Cir. 1990), that "estoppel principles are applicable to claims for benefits under unfunded single-employer welfare benefit plans under ERISA." We expressed no opinion as to the application of estoppel principles in situations involving funded plans or multi-employer plans. Later, in *Russo v. Health, Welfare & Pension Fund, Local 705, Int'l Bhd. of Teamsters*, 984 F.2d 762, 767 (7th Cir. 1993), we declined to answer the question of whether estoppel principles could be applied beyond the context defined in *Black*. We noted, though, as we had in *Black*, that allowing estoppel claims against funded, multi-employer plans may undermine the actuarial soundness of the plans. *Russo*, 984 F.2d at 767 n.4. And in *Coker v. Trans World Airlines,*

(continued...)

poses of this appeal that the claim is viable, and we will analyze it under the usual summary judgment standards.

Our review of the district court's grant of summary judgment is *de novo*. *Norman-Nunnery v. Madison Area Technical Coll.*, 625 F.3d 422, 428 (7th Cir. 2010); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009); *George v. Walker*, 535 F.3d 535, 538 (7th Cir. 2008). Ordinarily, the written plan document governs ERISA plan administration. *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 636 (7th Cir. 2007). Statements or conduct by individuals implementing the plan may estop the employer from enforcing a plan's written terms only in extreme circumstances. *Kannapien*, 507 F.3d at 636; *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 639 (7th Cir. 2004); *Sandstrom*, 214

---

[2] (...continued)
*Inc.*, 165 F.3d 579, 585 (7th Cir. 1999), we observed that we had repeatedly declined to decide whether estoppel reached beyond the limitations we expressed in *Black*. *See also*, *Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 280 (7th Cir. 1994) (declining to address whether estoppel principles apply to funded ERISA plans because the plaintiff had failed to establish the elements of estoppel); *Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan*, 188 F.3d 895, 900 (7th Cir. 1999) (same); *Downs v. World Color Press*, 214 F.3d 802, 806 (7th Cir. 2000) (same); *Sandstrom v. Cultor Food Science, Inc.*, 214 F.3d 795, 797 (7th Cir. 2000) (finding that statements or conduct by bureaucrats implementing a plan do not estop the employer to enforce the plan's written terms, but also noting that, although we have not barred the door on estoppel claims, we have made clear that only extreme circumstances justify estoppel).

F.3d at 797. A plaintiff demonstrating extreme circum-stances must also show (1) a knowing misrepresenta-tion; (2) made in writing; (3) reasonable reliance on that misrepresentation by the plaintiff; and (4) that the reliance was to the plaintiff's detriment. *Kannapien*, 507 F.3d at 636; *Vallone*, 375 F.3d at 639; *Coker*, 165 F.3d at 585. Negligence is not sufficient to meet the standard for a knowing misrepresentation. *Kannapien*, 507 F.3d at 636 (inadvertent mistakes and clerical errors are not knowing misrepresentations); *Downs*, 214 F.3d at 806 (negligence or bureaucratic sloppiness is not sufficient to demonstrate intentional misrepresentation); *Coker*, 165 F.3d at 585-86 (negligent misrepresentations and innocent errors will not support a claim for estoppel in the ERISA context).

Pearson contends that there is no dispute regarding the charge that the Plan misrepresented his pension benefits in writing and that he reasonably relied upon that misrepresentation. As for the remaining elements of the claim, Pearson asserts that he has raised a genuine issue of material fact on whether the misrepre-sentation was intentional and whether his reliance on the misrepresentation was detrimental.

Pearson first asserts that Booth feared that Pearson would leverage his potential age discrimination claim to negotiate a more favorable severance package for himself. Booth admitted that he did not usually provide detailed pension numbers during severance negotia-tions. Pearson contends that the numbers provided for four of the pension payment options were significantly

overstated, and Booth, as severance negotiator for Voith Paper, had an economic incentive to save money for his employer and negotiate a lower severance package. By leading Pearson to believe his pension would be higher than it actually was, Booth was able to negotiate more favorable terms for Voith Paper. None of this evidence, however, demonstrates an intentional misrepresentation *by the Plan*. First, in every ERISA estoppel claim filed by an employee, the error will always be in the employer's favor. An employee is unlikely to ask a court to estop a plan from paying *more* than the employee is entitled to under the written terms of a pension plan. The mere fact that there is an error that is in the employer's favor tells us nothing about the intent of the party making the error. Second, although Pearson's employer, Voith Paper, had an incentive to negotiate a lower severance package with Pearson, the Plan had no incentive at all to provide incorrect information to Pearson as a Plan participant. True, Booth served both as Voith Paper's Human Resources manager and as the Plan's administrator, but only in his capacity as Voith Paper's manager did he have any reason to provide inflated pension numbers to Pearson.

Pearson next points to Booth's contradictory statements regarding whether Booth knew Pearson's age at the time of his termination. Reading the evidence in a light most favorable to Pearson, Booth asserted he did not know whether Pearson was eligible for early retirement at the same time he encouraged Pearson to apply for early retirement benefits. Booth also signed off on a document prepared by Wiggs that stated that Pearson's

age was "57 years, 6 months." Pearson cites this as clear evidence that Booth in fact knew Pearson's age and knew he was not eligible for full retirement benefits. Pearson also points out that the numbers were highly overstated and that a person of Booth's experience should have recognized that there was a problem. This evidence arguably demonstrates that Booth was lying about his knowledge of Pearson's age and eligibility for early retirement, and that he should have noticed that something was amiss with Wiggs' calculations.

As with the other evidence, though, the Plan had no incentive to provide Pearson with inflated numbers. Only in his capacity as a manager for Voith Paper did Booth have a motive to overstate Pearson's pension benefits. But Pearson is not suing Voith Paper for estoppel; he is suing the Plan. And an ERISA plan is an entity legally separate from the employer. *See Helfrich v. Carle Clinic Ass'n, P.C.*, 328 F.3d 915, 916 (7th Cir. 2003) (under ERISA, a plan is a separate trust, distinct from the employer). We have no reason here to attribute the motive of the employer to the Plan. Finally, we note that Pearson's claim that the misrepresentation was intentional is seriously undermined by the fact that the numbers given for the lump sum payout were always accurate. It is difficult to conceive why Booth would try to trick Pearson into accepting a lower severance package by overstating four of the five pension payout options. Because the options were sup-posed to be calculated to be actuarially equivalent, Booth had an incentive to overstate *all* of the payment options. Booth, after all, did not know until after Pearson

signed the severance agreement which pension option he would select. Recall that Pearson signed the severance agreement in November 2006 and submitted his pension election form approximately one month later. It seems exceedingly unlikely that Booth, if he was truly trying to deceive Pearson, would risk giving Pearson an option for an accurate lump sum payment that would have nullified any negotiating advantage. In the aggregate, none of Pearson's evidence points to anything more than an inadvertent mistake or negligence by the Plan. As we noted above, mistakes and negligence are not sufficient to meet the standard for a knowing misrepresentation. *See Kannapien*, 507 F.3d at 636; *Downs*, 214 F.3d at 806; *Coker*, 165 F.3d 585-86. That Booth, on behalf of Voith Paper, may have intentionally misled Pearson in order to gain an advantage in severance negotiations is irrelevant in an action against the Plan. *See Helfrich*, 328 F.3d at 918 ("documents prepared by an employer do not supersede those documents that establish the terms of a pension plan"). Pearson's evidence against the Plan on the issue of intent is insufficient to create a genuine dispute.

Nor has Pearson produced sufficient evidence on the issue of detrimental reliance. Pearson alleges that Voith Paper initially agreed to pay seventy-five percent of his health insurance premiums for seventy-eight months following his termination. He calculates the value of this offer to be more than $40,000. As negotiations progressed, however, Voith Paper withdrew this offer and Pearson became liable for one hundred percent of the premiums. Pearson asserts that he would not have

agreed to this concession had he not relied on Booth's written representation that he would be receiving $1,156.89 per month in pension benefits. Because of his reliance on Booth's misrepresentation, he asserts that he lost the opportunity to negotiate for $40,000 in assistance with health insurance premiums. There are a number of flaws in Pearson's argument. First, detrimental reliance in the ERISA estoppel context requires a showing of economic harm. *Bock v. Computer Assocs. Int'l, Inc.*, 257 F.3d 700, 711 (7th Cir. 2001). Pearson's claim that he lost an opportunity to bargain for a better severance deal is insufficient to demonstrate economic harm unless he can also show that he had any realistic chance of striking a better deal. He has made no attempt to show that he would have done any better in the severance negotiations than the deal he ultimately signed. His claim for economic harm is entirely speculative on the record as it now stands. If anything, the record demonstrates that Pearson's severance negotiations with Voith Paper were hard-fought on both sides; although Pearson lost the $40,000 insurance benefit, he gained other concessions from Voith paper.

Second, Pearson agreed at his deposition that he had no desire to rescind his severance agreement and renegotiate the terms. Rather, he wanted the Plan to pay him the amounts stated in the original election form. His current argument that he relied on the misstated pension numbers in deciding to sign the severance agreement is undermined by his admission that he does not wish to rescind the severance agreement. What he wants is the full benefit of the severance agreement and also

the inflated pension benefits. What he is legally entitled to is the full benefit of the severance agreement and the correctly calculated pension amounts. His quarrel is not with the Plan; it is with his former employer.

In sum, Pearson has not presented the extraordinary circumstances necessary for the court to entertain a claim for estoppel against this ERISA Plan. He has also failed to produce sufficient evidence of intentional misrepresentation by the Plan or detrimental reliance on any misrepresentation. The judgment of the district court in favor of the Plan is therefore

AFFIRMED.